301 A.2d 572.

TOWN OF WARREN *vs.* ROBERT M. FROST *et ux.*

MARCH 12, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

Roberts, C. J. This is an action to enjoin the defendants from allegedly violating the zoning ordinance of the town of Warren by conducting commercial and business activities on land zoned for residential uses only. The complaint was filed on September 24, 1970, presumably pursuant to the provisions of G. L. 1956 (1970 Reenactment) §§45-24-6 and 45-24-7. The matter was heard by a justice of the Superior Court, who, on June 14, 1971, rendered a decision in favor of the plaintiff town. Judgment was entered thereon on September 14, 1971, and the defendants are now in this court prosecuting an appeal from that judgment.

The record discloses that on May 6, 1961, Donald G. Tripp, defendant's predecessor in title, made application for a variance under the pertinent provisions of the statute.[1] The variance sought referred to lots 317, 319, 321, and 324 on assessors' plat 13D, which at that time were zoned for residential C uses. The tract in question was described in the application as "vacant marshland" and is

---

[1]General Laws 1956 (1970 Reenactment) §45-24-19 empowers the board of review under subsection (c) "[t]o authorize upon appeal in specific cases such variance in the application of the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship. and so that the spirit of the ordinance shall be observed and substantial justice done."

located on the shore of the Kickemuit River at Read Avenue in the town of Warren.

The applicant sought a variance from the terms of the ordinance that would permit him to engage in commercial activities on the premises, including "boat repair, construction, storage, sale of boats and accessories and related services." The applicant further stated in the application that he proposed by way of site alterations the "construction of drainage ditches to drain area and to permit small boats to dock therein and also [the] construction of a cement or cinder block building with rail way." It further appears that Mr. Tripp submitted to the board of review a sketch of the proposed building, showing its dimensions.

Mr. Tripp's application was considered by the board of review at a meeting held on June 14, 1961, the minutes of which disclose that the application was granted. The minutes read: "An application from Donald G. Tripp for a variance from residential C to business D to construct a building for boat repair, construction, storage, sale of boats and accessories and other related services was granted." After the grant of the variance, until 1967, Mr. Tripp engaged in commercial activity on the land, including the storage, repairing and rebuilding of boats. The proposed building was not erected on the land and no permit for the construction of such a building was sought. The land was sold to the present defendants on September 20, 1967, and it is not disputed that the commercial and business use of the land has continued.

The town contends that the trial justice did not err in finding that the variance granted Tripp in 1961 was conditioned on the construction of the building referred to in the application. The question is, then, whether the board of review disclosed an intention to condition the grant on the erection of such building by its reference thereto within the terms of the grant.

In the first place, the enabling legislation provides that a board of review, in granting an exception or a variance, may, *inter alia,* "make such order, requirement, decision or determination as ought to be made." Section 45-24-19. Clearly, this provision of the statute confers upon a board of review authority to impose reasonable conditions upon the grant of a variance. *Guenther* v. *Zoning Board of Review,* 85 R. I. 37, 125 A.2d 214 (1956); *Woodbury* v. *Zoning Board of Review,* 78 R. I. 319, 82 A.2d 164 (1951).

However, nowhere in the record does it appear that the board in express terms imposed any conditions on the grant of the variance. The plaintiff directs our attention to the testimony adduced through Theodore W. Price, who owned land across the street from the Tripp land, apparently urging that this was evidence that would support a reasonable inference of an intention of the board to condition the grant. Mr. Price testified that Mr. Tripp had informed him that he was going to erect a building on the land and wanted to know how Price felt about it. Price testified, in substance, that he told Tripp that he was against it and he didn't think it was a proper place for such a building. The testimony of Price, while probative of the intention of Tripp with respect to the erection of a building at the time he sought the variance, will hardly support a finding that the board intended to impose such a condition on the grant of the variance. We are persuaded that the testimony of Price was not susceptible to a reasonable inference that the board conditioned the grant.

We attach particular significance to the total absence of any evidence in the record that the activities to be carried on by Tripp under the variance were of such a nature that they necessarily would be restricted to the interior of the proposed structure. There is nothing expressed in the grant of the board or in the evidence offered at the hearing that would support a finding that some or all of these

activities would be permitted only if carried on within the structure referred to in the application.

The plaintiff town directs our attention to *Strauss* v. *Zoning Board of Review,* 72 R. I. 107, 48 A.2d 349 (1946), apparently for the purpose of persuading us that the condition relating to the erection of the building inhered in the terms of the variance. However, we are unable to perceive in what manner plaintiff gains anything by the holding in that case. In *Strauss* the argument was made that the conditions on the issuance of an exception were inherent in the terms thereof. This court, however, rejected the concept of inhering conditions and held that such conditions on a grant permitting a use of the land would be effective only when specifically and clearly stated in the record. The court noted that conditions placed upon a variance when granted are placed upon the use of the premises and run with the land. Unless they are specifically and separately enumerated by the board, the material grounds of the decision would be left to speculation. The court cited *Olevson* v. *Zoning Board of Review,* 71 R. I. 303, 44 A.2d 720 (1945). As we understand *Strauss,* the court simply recognized the fundamental principle of the law of real property, to wit, that where there are conditions or restrictions on the use of land, they must appear as of record and be clearly stated in the documents or instruments evidencing the title thereto.

We turn to plaintiff's contention that the variance granted in 1961 expired by reason of the owner's failure to comply with the provisions of the ordinance as amended in 1966. It appears that the ordinance was amended in 1966, and sec. 32-60 thereof provided: "Any variance or special exception granted by the zoning board of review shall expire by limitation within six months from the date the same is granted unless the applicant shall, within such period, exercise the right granted by such decision or re-

ceive a building permit to do so." It is conceded that Tripp did not within six months of the date of the amendment either erect a building or apply for a permit to so do.

However, defendant urges that the savings clause set out in the 1966 amendment is applicable to all variances and exceptions granted prior to that date. Section 32-12 of the ordinance in pertinent part provides: "All variances and exceptions heretofore granted by the zoning board of review shall remain in full force and effect, and all terms, conditions and obligations imposed by such board shall remain in effect and be binding to the same extent as if such ordinance had not been repealed." Clearly, this clause preserves not only prior grants of exceptions or variances but preserves also whatever terms or conditions were imposed thereon.

The question, then, as we understand it, is whether the provisions of sec. 32-60, setting a period of time for the expiration of the grant, were intended to operate prospectively or to apply retroactively to variances or exceptions granted prior to its enactment. In the first place, it is settled in this state that the rules of statutory construction apply with equal force when called upon to construe an ordinance. *Nunes* v. *Town of Bristol,* 102 R. I. 729, 737, 232 A.2d 775, 780 (1967); *Taft* v. *Zoning Board of Review,* 75 R. I. 117, 64 A.2d 200 (1949).

It is equally well settled that a statute is presumed to have been intended to operate prospectively and will not be construed to operate retroactively unless such an intent appears in the express language of the statute or by necessary implication therefrom. *Langdeau* v. *Narragansett Ins. Co.,* 96 R. I. 276, 191 A.2d 28 (1963); *Foster* v. *Quigley,* 94 R. I. 217, 179 A.2d 494 (1962).

As we have already said, it is clear that the savings clause in the 1966 ordinance preserves the terms or conditions imposed upon a prior grant of an exception or a

variance. The fact that the ordinance does preserve such terms or conditions is suggestive, at least, of a legislative intent that the savings clause to that extent be applied retroactively to prior grants. However, in the circumstances of the instant case it is unnecessary for us to further consider or decide that question, having already concluded that the grant of the variance was not conditioned upon the erection of the structure referred to in the application.

In our opinion, then, the trial justice erred in granting injunctive relief in this case. However, we are concerned whether the business use now being made of the property covered by the variance is of a character that was not contemplated by the board of review when it granted the variance. The variance was granted to vary the terms of the ordinance so as to permit a business use thereon, specifically for "* * * boat repair, construction, storage, sale of boats and accessories and other related services * * *."

There is testimony adduced through Mr. Tripp that in 1962 defendant built a scow for dock-building purposes and kept a "big crane on the land." Tripp also testified that defendant subsequently formed a company known as the Rhode Island Dredge and Dock Co. and was using the land here under consideration as a home base for this company. The company, according to Tripp, engages in "dock building and dredging," and it was conceded during oral argument that defendant conducts dredging operations over a wide area.

It is questionable whether the equipment and machinery kept on the premises are such as would be necessary for the repair, construction, and storage of boats. According to the testimony of Romeo A. Sevigny, during March of 1970 he inspected the land. He testified that he found "[t]hree small boats, a molted winch, loader, dozer, tag-a-long trailer, air compressor, clamshell, and a dragline bucket, assorted lumber and blocking, cement mixer, two

large $H_2O$ pumps, two trucks both registered, and the yard was in an orderly fashion * * *." In our opinion, the interests of justice would best be served if this case were remitted to the Superior Court for further hearing on the question of whether the defendant Robert M. Frost, in basing his dredging activities on the land here under consideration, is acting in excess of the use granted by the board in 1961.

The appeal of the defendants is sustained, the judgment appealed from is reversed, and the case is remitted to the Superior Court for further proceedings in accordance with this opinion.

*Pasquale T. Annarummo,* Town Solicitor, for plaintiff.

*Edwards & Angell, Richard M. Borod,* for defendants.