350 A.2d 608.

TOWN OF WARREN *vs.* ROBERT M. FROST *et ux.*

JANUARY 13, 1976.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is an action by the town of Warren to enjoin the defendants from an alleged violation of the town's zoning ordinances by conducting certain commercial and business activities on land zoned for residential uses only. The complaint was filed on September 24, 1970, and after a hearing before a justice of the Superior Court, judgment was entered thereon on September 14, 1971, and the defendants appealed to this court. We sustained the appeal, reversed the judgment entered in that proceeding, and remanded the case to the Superior Court for further proceedings in accordance with our opinion. *Town of Warren* v. *Frost,* 111 R. I. 217, 301 A.2d 572 (1973).

The record discloses that in 1961, defendants' predecessor in title applied for a variance from the terms of the ordinance that would permit him to use the premises

for "boat repair, construction, storage, sale of boats and accessories and related services." The applicant further stated in the application that the extent of proposed alteration was

"construction of drainage ditches to drain area and to permit small boats to dock therein and also [the] construction of a cement or cinder block building with rail way."

The land in question is located on the shore of the Kickemuit River at Read Avenue in the town of Warren.

The application for the variance was heard by the zoning board of review on June 14, 1961. The minutes of that meeting read:

"An application from Donald G. Tripp for a variance from residential C to business D to construct a building for boat repair, construction, storage, sale of boats and accessories and other related services was granted."

After the grant of the variance Mr. Tripp used the land until 1967 for commercial uses, including the storage, repairing and rebuilding of boats. The proposed building was not erected on the land and no permit for the construction of such a building was sought.[1] On September 20, 1967, the land was sold to the present defendants and it is undisputed that the commercial and business use of the land has continued.

Although we held in our previous opinion that the trial justice erred in granting injunctive relief, we were concerned whether the use then being made of the property was the kind contemplated by the board when it granted the variance. We pointed out that the variance was granted to vary the terms of the ordinance so as to permit a business use thereon, specifically for " "* * * boat repair,

---

[1] In *Town of Warren* v. *Frost,* 111 R. I. 217, 220-21, 301 A.2d 572, 573-74 (1973), we held that the variance was not conditioned upon the erection of the proposed building. That issue is not before us in this proceeding.

construction, storage, sale of boats and accessories and other related services * * *.'" *Town of Warren* v. *Frost, supra* at 223, 301 A.2d at 575. We then referred to testimony adduced through Mr. Tripp that in 1962 Mr. Frost built a scow for dock-building purposes and kept a big crane on the land; that Mr. Frost subsequently formed a company known as the Rhode Island Dredge and Dock Co. and was using the subject land as a home base for this company; and that the company was engaged in "dock building and dredging." We also noted that it was conceded during oral argument in that appeal that defendant conducts dredging operations over a wide area. Further, we questioned whether the equipment and machinery kept on the premises were such as would be necessary for the repair, construction, and storage of boats. We expressly referred to the testimony of Romeo A. Sevigny, who inspected the land in March 1970, and testified that he found

> "'[t]hree small boats, a molted winch, loader, dozer, tag-a-long trailer, air compressor, clamshell, and a dragline bucket, assorted lumber and blocking, cement mixer, two large $H_2O$ pumps, two trucks both registered, and the yard was in an orderly fashion * * *.'" *Id.* at 223, 301 A.2d at 575.

Under those circumstances we decided to remit the case to the Superior Court for further hearing on the question of whether the defendant, Robert M. Frost, in basing his dredging activities on the land under consideration, was acting in excess of the use granted by the board in 1961. In brief, we asked the Superior Court to conduct a hearing to determine whether the use then being conducted on the premises was permissible within the language of the variance granted.

The case was heard on remand before a justice of the Superior Court in February 1974. The witnesses presented by the town testified to the facts set forth in our

prior opinion, namely, that defendants owned a company known as Rhode Island Dredge and Dock Co.; that the company used the subject land as a home base for dredging and dock-building operations; and that the equipment and machinery referred to in our previous opinion were located from time to time on that land.

The defendants presented two witnesses, defendant, Robert M. Frost, and Neil W. Ross, the executive director of the Rhode Island Marine Trade Association, Inc.

Mr. Frost discussed the history of the dredging company, explained the nature of dredging and dock-building work and the nature and use of the equipment and machinery listed in our previous opinion. He testified that the large bulk of his work to date had consisted of dredging, dock-building and repair for other boat owners and owners of piers, docks and moorings in the area. He had also performed work for other marinas in the area.

He testified that he had not yet done any substantial work in the area of boat repair, construction, storage and sale of boats and accessories because an application has been pending for several years before the State Coastal Resources Management Council for permission to do the necessary dredging and dock-building in the water adjacent to the subject land. Mr. Frost stated that that application was still pending and for that reason he has had to emphasize dredging and dock services on facilities owned by other individuals or companies. He plans, upon the grant of his pending application, to build his own marina and to engage, generally, in boat repair, construction, storage, sale of boats and accessories and related services. He testified to the effect that, after his application is granted, he would continue to own the equipment and machinery now owned by Rhode Island Dredging and Dock Co., and that said equipment and machinery would be used for the initial construction and for periodic

maintenance of his own facilities. In addition, if he has available time, he may continue to service other facilities or, in the alternative, he might rent his dredging and dock-building and maintenance equipment to others. Mr. Frost also testified that he had visited a number of marine facilities in the area and that he observed equipment and machinery located on the premises of these other marine facilities substantially identical to that mentioned in our previous opinion.

Mr. Neil W. Ross's testimony corroborated, in general, the testimony of Mr. Frost. He testified that Mr. Frost's activities were then primarily dredging and dock-building.

On April 9, 1974, the trial justice, after reviewing the testimony presented by the parties, rendered his decision which contains the following findings of fact, namely: that dredging and dock-building and maintenance are essential for marine facilities, and if a facility does not own the necessary equipment and machinery then it must either rent the equipment and machinery or hire another company to do the required work; that implied in the variance grant is the right to have all necessary and proper facilities to carry on the permitted activities, the right to maintain said facilities and the right to utilize all necessary and proper equipment and machinery for said maintenance; that the services of dredging, dock-building and dock maintenance are essential and necessary for the maintenance of a facility for the repair, construction, storage and sale of boats, and that equipment and machinery such as that found on the subject property are of the type in common use to carry out such services, and many marine facilities own such equipment and machinery; and that in the alternative, dredging and dock-building services and the equipment and machinery used therein could be considered to be related services in

the language of the variance. That is, services related to boat repair, storage, sale and construction.

On April 15, 1974, a judgment in favor of defendants was entered in the Superior Court.

The sum and substance of the town's argument is that the dredging and dock-building activities presently being carried on by defendants exceed the uses permitted or contemplated by the variance granted in 1961.

The defendants concede that the dredging and dock-building activities are presently their principal activity, but they state that the only reason for this is the fact that they have not yet obtained approval by the Coastal Resources Council for permission to dredge and to construct a pier adjacent to their land.

In our judgment the trial justice's finding that the present operation of Mr. Frost's activities are consonant with his future plans was not the question before the Superior Court, nor is it the issue here. We remanded the case to the Superior Court for further hearing on the question of whether defendant, Robert M. Frost, in basing his dredging activities on the land under consideration, was acting in excess of the use granted by the board in 1961. Our interest centered on finding out what was then happening on the land in question, not what would happen in the future.

We are convinced that the trial justice, in passing on the evidence before him, misconceived the thrust and purposes of our remand. In the circumstances, since the material evidence on the controlling issue in this proceeding is undisputed, we have examined the record ourselves, in the context of our remand in our previous opinion.

On this record it is clear that the primary use of this land is presently devoted to housing Mr. Frost's dredging, pile driving and dock-building business. The land is not being used for any of the uses contemplated by the 1961

variance, namely: "* * * boat repair, construction, storage, sale of boats and accessories and other related services * * *." Therefore, we cannot say, on this record, that the dredging, pile driving and dock-building activities, and the storage of the equipment and machinery described above, are essential, or related to any permitted use then and now being conducted on the subject land.

For the reasons stated, we conclude that the trial justice's decision must be reversed.

The plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for the entry of judgment for the plaintiff and for the issuance of an injunction enjoining the defendants from using the land for the business of dredging, pile driving and dock-building until further order of that court.

Mr. Chief Justice Roberts did not participate.

*Pasquale T. Annarummo,* Town Solicitor, for plaintiff.

*Edwards & Angell, Richard M. Borod,* for defendants.