DECISION
East Bay Mental Health Center and the Rhode Island Housing and Mortgage Finance Corporation ("the appellants") appeal a decision of the Zoning Board of Review of the City of East Providence ("the Board"). The Board affirmed the decision of the Zoning Officer of the City of East Providence ("Zoning Officer"), denying the appellants a zoning certificate stating either (1) that their proposed use of certain property was permitted under a previously granted use variance or (2) that the proposed use qualified as a community residence pursuant to G.L. (1956) §§ 45-24-31(15) and 45-24-37. This Court has jurisdiction pursuant to G.L. (1956) § 45-24-69. After reviewing the entire record and considering the arguments, the Court affirms the decision of the Board.
 Facts and Travel
Appellant Rhode Island Housing and Mortgage Finance Corporation ("Rhode Island Housing"), which is a quasi-governmental corporation, owns real property at 70 Turner Avenue in East Providence. Said property includes a ten thousand square foot building, which originally housed a convent. The property is located in a densely populated residential area that is zoned for one and two family residences. In 1992, East Bay Geriatric Center purchased the building and applied for a use variance in order to convert the facility to an adult day care center and assisted living residence for the elderly. In 1992, the Zoning Board of Review ("1992 Board") approved a use variance for a twenty unit assisted living facility and a sixty person adult day care center. The assisted living facility included a communal kitchen and dining room but individual/separate living quarters. The record reflects that East Bay Geriatric Center defaulted on its mortgage, causing Rhode Island Housing to foreclose on the property.
Subsequently, Appellant East Bay Mental Health Center ("East Bay"), which is a nonprofit corporation, entered into a conditional purchase and sale agreement with Rhode Island Housing for the subject property. The agreement was conditioned upon East Bay receiving the required zoning clearance. East Bay proposed to transform the facility into a ten to twelve unit assisted living residence for the mentally ill. Unlike the previous assisted living facility for the elderly, this residence would have kitchenettes and bathrooms installed for each unit. Moreover, the residents would have leases to their units.
In a letter of August 16, 2001, to the East Providence ("City") Zoning Officer, Edward Pimentel, East Bay sought the issuance of a zoning certificate pursuant to G.L. (1956) § 45-24-54. A zoning certificate is a "document signed by the zoning enforcement officer . . . which acknowledges that a use, structure, building or lot either complies with or is legally nonconforming . . . or is an authorized variance or modification therefrom." East Providence Zoning Ordinance § 19-1. In the letter, East Bay argued that (1) the proposed use was the functional equivalent of the prior use and therefore permitted without the Board's approval, and that (2) the proposed use qualified as a community residence pursuant to G.L. (1956) §§ 45-24-31(15) and 45-24-37.
In the City's reply letter dated September 19, 2001, the Assistant City Solicitor, Gregory S. Dias ("Dias"), denied East Bay's zoning certificate request and stated that East Bay needed to apply for zoning relief first from the Board. The City found that the proposed changes to the facility were not permitted under the previous use variance because of the extent of the alterations that would be made to the original floor plan. The City also stated that the proposed use would not qualify as a community residence under §§ 45-24-31(15) and 45-24-37 because the proposed number of residents exceeded the limit set out in the section.
The appellants appealed the Zoning Officer's decision to the Board. Simultaneously and in the alternative, the appellants applied to the Board for a use variance in order to modify the terms of the 1992 use variance.[1] On November 28, 2001, the Board, sitting as an appellate board, held a meeting as to the appellants' appeal of the Zoning Officer's decision. In a unanimous decision of December 6, 2001, the Board affirmed the decision of the Zoning Officer based on the views of its members that the proposed floor plan changes constituted a fundamental change in use and that the proposed use was more akin to an apartment complex than a community residence. The appellants filed the instant appeal to this Court.
 Jurisdiction and Standard of Review
This Court has jurisdiction over these appeals pursuant to G.L. (1956) § 45-24-69(a). This Court's scope of review is narrow:
 (d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This Court's review is circumscribed by and deferential to the administrative agency. Restivo v. Lynch, 707 A.2d 663, 667 (R.I. 1998). It cannot substitute its judgment for that of the zoning board, but must uphold a decision supported by substantial evidence contained in the record. Hein v. Town of Foster Zoning Bd. of Rev., 632 A.2d 643, 646 (R.I. 1993). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Board of Review, No. 2001-505-M.P., 2003 R.I. LEXIS 57, at *12 n. 5 (R.I. Supreme Ct. filed March 21, 2003) (quoting Caswell v. George Sherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the Court must examine the record to determine whether competent evidence exists to support the Zoning Board's decision. New England Naturist Assoc., Inc. v. George, 648 A.2d 370, 371 (R.I. 1994).
 The Affirmation of the Zoning Officer's Decision
a. The Proposed Use and the 1992 Use Variance 
Since the appellants argue that their proposed use was permissible under the 1992 use variance, the Court first examines the requirements for obtaining a use variance. General Laws (1956) §§ 45-24-41(c), (d) lists the evidentiary requirements that an applicant must satisfy in order to receive the requested relief.[2] There is a heavy burden placed on the applicant. "It is well settled that to obtain a variance from a permitted use of property, a landowner must prove that `rigid insistence upon the property being devoted to a use permitted by the zoning regulations will deprive him of all beneficial use of his property and will therefore be confiscatory.'" Gaglione v. DiMuro, 478 A.2d 573, 576 (R.I. 1984) (quoting Goodman v. Zoning Bd. of Rev. of Cranston,105 R.I. 680, 683, 254 A.2d 743, 745 (1969)); Lischio v. Zoning Board of Review, No. 2001-505-M.P., 2003 R.I. LEXIS 57, at *18 (R.I. Supreme Ct. March 21, 2003). Since the process involved in obtaining a use variance is a rigid one, it follows that once the use variance is obtained, the successful applicant must adhere to the specific use for which the variance was granted.
East Bay Geriatric met that heavy burden and obtained the 1992 use variance for a twenty unit communal assisted living facility and adult day care center. In the minutes relating to the decision granting the variance, the Board explicitly stated that the variance was granted subject to:
 "the petitioner obtaining all necessary permits; that this variance only applies to an adult day care center and twenty unit residential assisted living facility; if they run into some kind of problems financially later then it will have to [be] used by the following owners as a day care center; we don't want it to turn into apartments, condos . . . ."
"In granting a variance . . ., the zoning board of review . . . may apply the special conditions that may, in the opinion of the board . . ., be required to promote the intent and purposes of the comprehensive plan and the zoning ordinance of the city or town." G.L. (1956) § 45-24-43;Town of Warren v. Frost, 111 R.I. 217, 219-20, 301 A.2d 572, 573-74 (1973) (stating that zoning boards have discretion to impose conditions upon the grant of a variance).
In the instant appeal, the Board found that the appellants' instant proposal called for eliminating the day care center and turning the twenty unit communal residence into ten independent dwelling units. The Board also found that-unlike the previous use-each unit would include a bathroom and kitchen. The record of the hearing on November 28, 2001, also reveals that the Board found it substantial that the residents of this assisted living facility would have leases to their dwelling units, which-in the eyes of the Board-further made the proposed facility more akin to an apartment complex than an institutional residence. The letter by the Assistant City Solicitor, Mr. Dias, on behalf of the Zoning Officer stated that the proposed changes were inconsistent with the 1992 use variance because the grant of that variance was based on a specific floor plan, which the proposed changes would substantially modify. Section 19-50(f) of the East Providence Zoning Ordinance states:
 "All work approved by the issuance of a variance shall be carried out only in conformity with the application and any conditions, modifications and restrictions set by the zoning board of review. Minor changes must be approved by the zoning officer in consultation with the building inspector. Changes deemed to be major by the zoning officer or building inspector shall be resubmitted to the zoning board of review in the form of a new application. Any work carried out in violation of this provision shall be ordered halted and removed."
(Emphasis added.) In a unanimous decision, the Board stated that the proposed changes to the floor plan were substantial and, thus, required a new use variance application.
With respect to the 2001 decision, the appellants claim that the Board violated their constitutional guarantees to equal protection by finding that the proposed changes were not permitted under the 1992 use variance. The appellants argue that their proposed use is a less intensive use of the facility and that it is therefore permitted as of right. The appellants argue that the proposed use is a less intensive use and reiterate that there would only be ten to twelve residents at the facility under their plan-as opposed to twenty residents-and that the day care center would be eliminated.
In its 2001 decision, the Board found that the appellants are not merely proposing to decrease the number of residents, but rather they are proposing a use different in kind than the previous use and, as the Board found, one that requires substantial interior structural modifications. Pursuant to § 19-50(f) of the East Providence Zoning Ordinance, the Board's finding that the proposed changes were substantial was reason enough for the Board to affirm the Zoning Officer's decision that a new use variance application was required. The Court thus finds that the Board's determination-that the proposed changes were substantial and thus required a new use variance application-is supported by the substantial, probative, and reliable evidence of record and was not arbitrary, capricious, or affected by error of law.
The appellants further state that the Board's decision must be rationally related to a legitimate government interest, which in this case relates to the public health, safety, or welfare. The appellants conclude that there can be no rational basis for the Board's decision to deny the proposed assisted living units for the mentally ill because the previously granted use variance was for an institutional use.
Zoning is a police power and, as such, "is inherent in the state to regulate private conduct to protect and further the public welfare." 1 Ziegler, Rathkopf's The Law of Zoning and Planning § 1.01[2]. InP.J.C. Realty, Inc. v. Barry, 811 A.2d 1202 (R.I. 2002), the Rhode Island Supreme Court stated:
 "In 1991 the Legislature enacted the Rhode Island Zoning Enabling Act. It requires that zoning ordinances be developed and maintained in accordance with a comprehensive plan prepared pursuant to the Rhode Island Comprehensive Planning and Land Use Act (CPLURA) . . . . A comprehensive plan, according to the CPLURA, `is a statement (in text, maps, illustrations, or other media of communication) that is designed to provide a basis for rational decision making regarding the long term physical development of the municipality.'"
Id. at 1204 (citations omitted). The Enabling Act sets out the legislative goals of zoning, which include, inter alia, the promotion of the "public health, safety, and general welfare"; "[p]roviding for a range of uses and intensities of use appropriate to the character of the city"; "[p]roviding for the protection of the natural, historic, cultural, and scenic character of the city"; and "providing for procedures for the administration of the zoning ordinance, including, but not limited to, variances." G.L. (1956) § 45-24-30; see Town ofCoventry Zoning Bd. of Rev. v. Omni Dev. Corp., 814 A.2d 889, 898-99 (R.I. 2003) (stating that the Legislature has determined that any properly enacted zoning ordinance regulation or requirement is consistent with local needs).
"When an equal protection issue is raised, the proper judicial focus is on whether a rational basis for different treatment of similar land uses might reasonably exist, in view of the nature, purpose and scope of regulation." 1 Ziegler, Rathkopf's The Law of Zoning and Planning § 2.03[3]. Since the Court has found that substantial evidence supports the Board's decision that the proposed changes were substantial and therefore not permitted under the 1992 use variance, the Court finds that the Board's decision to require a new use variance application based on that finding to be rationally related to the public health, safety, and welfare and not in violation of constitutional, statutory, or ordinance provisions.
The appellants further contend that the Board did not address the assisted living use aspect in its decision, but instead focused solely on the proposed structural modifications; thus, the appellants argue that the Board's decision was arbitrary and capricious because it was not comprehensive. The record reveals, however, that the Board did not have to address the difference or lack thereof between communal assisted living and apartment-style assisted living in order to conclude that the appellants' proposal sought to substantially modify the existing facility. The Board found that the proposed structural modifications-converting the existing twenty rooms into ten independent dwelling units-were substantial and thus required a new use variance regardless of the appellants' arguments that their proposed use was functionally equivalent to the previous use. See East Providence Zoning Ordinance § 19-50(f). The Court thus finds that the appellants' substantial rights were not violated by the Board's failure to address the assisted living question.
b. "Community Residence" as defined in G.L. § 45-24-31(15)
The Zoning Enabling Act places community residences above and beyond the requirements of local zoning laws. G.L. (1956) § 45-24-37; Ronald F. Chase, Rhode Island Zoning Handbook § 49 (1993). Section45-24-31(15) defines community residence as:
 "A home or residential facility where children and/or adults reside in a family setting and may or may not receive supervised care. This does not include halfway houses or substance abuse treatment facilities. This does include, but is not limited to the following:
 (i) Whenever six (6) or fewer children or adults with retardation reside in any type of residence in the community, as licensed by the state pursuant to chapter 24 of title 40.1. All requirements pertaining to local zoning are waived for these community residences;
 (ii) A group home providing care or supervision, or both, to not more than eight (8) persons with disabilities, and licensed by the state pursuant to chapter 24 of title 40.1; . . . ."
 Section 45-24-37 concerns permitted uses and states:
 "(b) Notwithstanding any other provision of this chapter, the following uses are permitted uses within all residential zoning use districts of a municipality and all industrial and commercial zoning use districts except where residential use is prohibited for public health or safety reasons: . . . .
 (2) Community residences"
The appellants argue that their proposed use is permitted because it qualifies as a community residence pursuant to §§ 45-24-31(15) and45-24-37. The appellants contend that the Board violated their right to procedural due process because the Board's decision did not address the question of whether the proposed use qualified as a community residence. Therefore, the appellants argue that they were deprived of a fair hearing.
In affirming the Zoning Officer's decision, the Board thereby adopted the decision as its own. In the Zoning Officer's decision, it stated that the proposed use did not qualify as a community residence pursuant to §§ 45-24-31(15) and 45-24-37 because the statute limits the number of occupants in such residences. Dias, on behalf of the Zoning Officer, stated that the appellants' proposed numbers of between ten or twelve adults were greater than the statutes' limits of six and eight. The record demonstrates that the community residence issue was addressed in the decision. The Court thus finds that the Board did not violate the appellants' substantial due process rights by affirming the explicit findings of the Zoning Officer.
Furthermore, the appellants argue that the proposed use does qualify as a community residence because although the statute limits the number of residents, it does so after the broadening language "[t]his does include, but is not limited to the following." The appellants thus argue that the list in § 45-24-31(15) is not exhaustive and that a mechanical application of the section would defeat legislative intent.
In construing a statute, it is the court's task to "establish and effectuate the intent of the Legislature." C J Jewelry Co. v.Department of Employment Training, Bd. of Rev., 702 A.2d 384, 385 (R.I. 1997) (quoting Wayne Distrib. Co. v. Rhode Island Comm'n For HumanRights, 673 A.2d 457, 460 (R.I. 1996)). The legislature's intent is determined "by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning. Id.
(quoting Asadoorian v. Warwick School Comm., 691 A.2d 573, 578 (R.I. 1997)). "Furthermore, `when the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and we must give the words of the statute their plain and obvious meaning.'" Id. (quoting Wayne, 673 A.2d at 460).
Section 45-24-31(15) enumerates certain types of community residence but also contains language extending the list to other facilities not specifically listed. However, the use of the general words "[t]his does include, but is not limited to the following" do not expand the definitions of those facilities subsequently listed as community residences in the section. "[H]ad the legislature intended the general words to be used in their unrestricted sense, it would have made no mention of the particular words." 2A Norman J. Singer, SutherlandStatutes and Statutory Construction § 47:17 at 285 (6th ed. 2000). All of the definitions of those facilities qualifying as community residences in § 45-24-31(15)(i)-(iv) contain limits on the number of residents allowed in the facility and each contains the restrictive language "no more than" `x' number of persons. "Disregard of the limiting effect of the enumerated [community residences] would run contra to the well-recognized presumption that every word, sentence or provision of the statute was intended for some useful purpose and has some force and effect." Providence Journal Co. v. Mason, 116 R.I. 614, 625, 359 A.2d 682, 687 (1976).
Furthermore, since community residences enjoy immunity from local zoning laws, the Legislature intended to limit the number of residents in such facilities and thus the numerical limits it purposely set out in § 45-24-31(15)(i)-(iv) were not open to expansion. C JJewelry, 702 A.2d at 385 (stating that the Court accords words there ordinary, plain meaning when examining the language, nature, and object of statute). As to those qualifying residences listed in §45-24-31(15)(i)-(iv), the Court finds each specifically listed residence as complete in its terms and thus closed to expansive construction. Here, the Zoning Officer stated in plain language that the number of residents that the appellants wish to accommodate, ten to twelve, exceeds the limits of six and eight set out in § 45-24-31(15)(i)-(iv). The Court finds that the Board's affirmation of this finding was not affected by error of law.
Additionally, the section defines a community residence as providing a "family setting." Here, the record reflects that the appellants proposed to create apartment-style, individual dwelling units each complete with their own bathroom and kitchen. Furthermore, the residents will have leases to their units. The record also reflects that although a common dining area will be provided, the purpose and nature of the proposed facility would be to provide living arrangements that would allow the residents to conduct their daily lives as self-sufficiently and independently as possible. This proposed use is different than the communal living arrangements currently existing in the facility and, importantly, considering that the residents will lease their units, strays too far from the "family setting" requirement in the section to qualify as a community residence. The Court therefore finds that the Board neither acted arbitrarily nor capriciously in rejecting the appellants' request for a zoning certificate stating that the proposed use qualified as a community residence, nor was its decision affected by other error of law.
 Conclusion
After reviewing the entire record, the Court affirms the decision of the Board. The Court finds that the Board's decision is supported by the reliable, probative, and substantial evidence of record. Furthermore, the Court also finds the Board's decision did not constitute an abuse of discretion, was not affected by error of law, is not arbitrary or capricious, and is not in violation of constitutional or statutory provisions. Since the substantial rights of the appellants have not been violated, the Court affirms the decision of the Board. Counsel are directed to confer and submit to this Court the proper order for entry after notice.
[1] The request for a use variance was denied, and the appellants appealed that decision to this Court. See East Bay Mental Health Ctr. v.Saveory, C.A. No. PC01-6791, Rhode Island Superior Court (complaint filed Dec. 27, 2001).
[2] General Laws (1956) § 45-24-41(c) states:
 "In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."
 Section 45-24-41(d) states in part:
 "The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: (1) in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. Nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance . . . ."