[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
David and Anne Ringland ("Appellants" or "Ringlands") appeal the decision of the Town of Smithfield Zoning Board of Review ("Zoning Board" or "Board") granting their application for a use variance, with several corresponding conditions. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69. For the reasons set forth below, the Court reverses condition number eight because it conditions the variance upon the land being used by a particular person and is thus affected by error of law. The Court denies Ringlands' appeal with reference to the remaining conditions. With respect to all but condition numbered eight, the decision of the Zoning Board of Review of the Town of Smithfield is affirmed.
 FACTS AND TRAVEL
The Ringlands own a 2.663 acre parcel (property) located at 4 Meadow View Drive in Smithfield, Rhode Island. The property is designated as Tax Assessor's Plat 46, Lot 101, and is located in an R-20 (Residential) Zoning District. Application for Variance and Appeal (Application) at 1. The property includes several structures, including a house, a lawn and garden shed, a barn, and a garage. May 21, 2003 Hearing Tr. at 18.
The Ringlands' son, Scott Ringland ("Scott"), lives with his parents and operates a business called Green Pastures Landscaping, which is registered with the Town of Smithfield.Id. at 37, 34. The Ringlands constructed the garage, at least in part, for their son to use as a storage facility for his landscaping equipment and supplies. The structure was constructed pursuant to a building permit issued on March 3, 2000. Application at Ex. A. The building permit application evidences that the structure was built for residential use, specifically "barn/storage/garage," that its dimensions are thirty feet by sixty feet, that it is twenty feet high, and that it is a "Simple pole Barn structure Built on footings." Building Permit Application at 1.
As of May 21, 2003, the landscaping equipment used by Scott in connection with Green Pastures Landscaping consisted of a dump truck, a statebody, a Bobcat, a backhoe, a couple of trailers, and some mowers. Id. at 35. This controversy stems from Scott's use of the garage in furtherance of the operation of his landscaping business.
On November 21, 2002, Smithfield's Building/Zoning Inspector, John Rainone, Jr., sent a one-page "notice of violation" letter to the Ringlands directing them to "cease the operation of the landscape business from this location immediately."[1]
Rainone stated that the recently erected barn/garage was for residential purposes only, that the property is in a residential zone,[2] and that a landscaping business cannot be operated from the property. He also referred to "numerous complaints" that the town had received concerning the operation of the landscaping business on the Ringlands' residential property.
On December 17, 2002, the Ringlands appealed the "notice of violation" letter to the Zoning Board, and in the alternative, the Ringlands sought a use variance. Application at 1. On page two of the Application, the Ringlands specified that the use variance was for "continued use of a 30' × 60' garage for storage of equipment and farm supplies." Exhibit A of the Application further indicates that "equipment stored in the garage is used not only for landscaping, but by the applicant in the maintenance and care of his property and horses" and that "hay and grain for the horses" is also stored in the garage.
The Zoning Board held hearings on May 21, 2003 and August 6, 2003. At the May hearing, more than a dozen persons testified, including David and Scott Ringland. May 21, 2003 Hearing Tr. at 16-40, 45-75. In addition, a letter was read into the record, and photographs and letters were submitted. Id. at 19-20, 25, 44-45, 54, and 62. Some of the witnesses supported the Ringlands' application, while others opposed it. Compare id. at 68-69with id. at 45-52.
At the August hearing, Scott Ringland offered additional testimony concerning the operation of his landscaping business. Aug. 6, 2003 Hearing Tr. at 5-37. Scott proposed several conditions that he would agree to follow if the Zoning Board granted a use variance. Id. at 21; see Hearing Ex. 22.[3] The five conditions Scott proposed were:
 1. The property would be landscaped in accordance with the landscape plan presented to the Board prepared by Central Nurseries; and
 2. There would be no deliveries or storage of any landscaping materials on the site and no employee parking; and
 3. The equipment set forth below would be the only landscape equipment owned by Scott Ringland allowed to be stored inside the garage: backhoe; Bobcats; mowers; dump truck; pickup/state body truck; three trailers; and
 4. Only the equipment listed above would be brought in or out of the garage between the hours of 7:00 a.m. and 7:00 p.m.; and
 5. No landscaping business operations would be conducted out of the garage and it will not contain an office for business.
The Ringlands also presented expert testimony from William Coyle, Jr., a certified real estate appraiser. Id. at 37-38. Coyle testified that if the aforementioned conditions were imposed, the garage would have neither "an adverse impact on the health, safety, and welfare of the community," nor "an adverse impact on the marketability of the surrounding real estate." Id. at 40.
After Coyle's testimony, the Ringlands' neighbors submitted a petition in opposition to their application. Id. at 55-56. Another real estate appraiser, Paul A. Bernard, testified as an expert witness on behalf of several neighbors who opposed the application. Id. at 57, 61. Bernard characterized the garage as "an industrial, commercial steel building" and opined that the garage is "detrimental to the neighbors surrounding the property." Id. at 63, 68. Three neighbors also testified, and additional photographs were submitted in evidence. Id. at. 71-73; see, e.g., id. at 19.
On an unknown date or dates prior to the public hearing, all of the Zoning Board members viewed the property. Resolution Denying an Appeal and Granting a Variance at Lot 101 Assessor's Plat 46 (Zoning Board Decision) at 1. However, the record does not reflect any specific observations made by the Board members when they viewed the property.
On October 7, 2003, the Zoning Board posted its decision denying the Ringlands' appeal of the "notice of violation letter" and granting their application for a use variance subject to specific conditions. The Board affirmed the Building Inspector's determination that the Ringlands were in fact operating a business from their residential property, but approved their application for a variance to store landscaping equipment. Id.
at 5-7. This variance was granted subject to nine enumerated conditions:
 1. No landscaping business shall be operated on any portion of the property, nor shall the property contain an office for any business use.
 2. The property shall be landscaped in accordance with the Central Nurseries landscaping plan presented by the applicants under the direction of the Town Engineer. The landscaping plan shall be implemented by October 30, 2003.
 3. There shall be no deliveries or storage of any landscaping materials on the site.
 4. There shall be no employee parking on the property related to the landscaping business.
 5. Each year, the equipment shall be removed from the property by April 1, plus or minus two (2) weeks, and shall not return to the property until November 1, plus or minus two (2) weeks.
 6. The annual removal and return of the equipment shall occur only between the hours of 8 AM and 4 PM.
 7. The old iron boiler shall be removed from the property within thirty (30) days of the recording of this Resolution.
 8. This variance shall expire when Scott Ringland is no longer engaged in the landscaping business.
 9. Only the following equipment shall be stored in the barn and there shall be no other equipment stored in the barn or on the property: One (1) backhoe; One (1) Bobcat; mowers; One (1) dump truck; One (1) pick-up/state body truck; Three (3) trailers. Id.
at 6-7.
It is from certain of these conditions that the Ringlands take their appeal.
On October 27, 2003, the Ringlands filed a timely appeal of the Zoning Board Decision. On June 29, 2004, the Superior Court issued a preliminary order staying the enforcement of conditions five (5) and six (6) pending a decision on the Ringlands' appeal. The Order also requires the Ringlands to 1. comply with all other conditions; 2. "store landscaping equipment inside the garage only;" 3. "only transport the landscaping equipment into and out of the garage a total of three (3) times during any week;" and 4. only transport said equipment "between the hours of 7 a.m. and 7 p.m."
The Ringlands seek reversal of the conditions imposed by the Zoning Board in granting their application for a use variance. Appeal of Zoning Board Decision of the Town of Smithfield (Appeal) at 4. The Ringlands identify the issues on appeal as "1. Whether the conditions placed upon the variance were unreasonable and not specifically based upon the facts and testimony in the record; and 2. Whether the conditions placed upon the granting of the variance by the Zoning Board amount to a denial of the relief requested." Ringlands' Mem. at 2.
 STANDARD OF REVIEW
Superior Court review of a zoning board's decision is governed by § 45-24-69 (d), which provides that:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, Superior Court justices cannot substitute their own judgment for that of the zoning board; rather, zoning board decisions supported by substantial evidence in the record must be upheld. Mill RealtyAssocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quotingDeStefano v. Zoning Bd. of Rev., 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979)). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd.of Rev. of North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981)). However, Superior Court justices may reverse a zoning board decision predicated upon an error of law.Kaveny v. Town of Cumberland Zoning Bd. of Rev., 875 A.2d 1, 14
(R.I. 2005).
 USE VARIANCE
Although several neighbors opposed the Ringlands' application for a use variance at the Zoning Board hearings, none of them has appealed the decision to grant the variance. Since the issue of whether the Zoning Board erred in its underlying decision granting the use variance has not been raised by an aggrieved party on appeal, the Court will not review that decision sua sponte and will not permit the Zoning Board to revisit its own decision in this proceeding.[4]
Nonetheless, the Court cannot determine the issues raised by the Ringlands in a vacuum. If the Ringlands succeed in persuading the Court to vacate one or more of the subject conditions, the Court must then make a further determination. The Court must then decide whether such condition or conditions were "an integral oressential part" of the [Zoning Board Decision]. 3 Arden H. Rathkopf, The Law of Zoning and Planning, § 60.38 (2005) (emphasis added); see also 7 Patrick J. Rohan, Zoning andLand Use Controls, § 43.03[3] (2002) ("Where courts find improper conditions to exist, the courts' options include . . . finding that the variance falls with the illegal condition."). If so, then the underlying decision to grant the variance will itself be held invalid. Id. Accordingly, the Court cannot review the conditions at issue without first examining the underlying use variance, without which, there would be no conditions.
 CONDITIONS
With its approval of the Ringlands' application for a variance, the Zoning Board required compliance with nine conditions, as set forth above in their entirety. The stated purpose of the underlying variance was a grant of permission to "store landscaping equipment as filed by the applicants." Zoning Board Decision at 6. Storage, as defined by the ordinance, is "[t]he deposit and care of materials in a warehouse or otherwise for safekeeping and/or ultimate distribution." Ord. at Art. 2.2 (136). Applying the ordinance's definition to the facts of this case, it is clear that the Zoning Board is permitting a variance for landscaping equipment to be deposited into the garage for safekeeping.
On appeal, the Ringlands ask this Court to remove certain conditions mandated by the Zoning Board in its decision. Ringlands' Mem. at 20.[5] In particular, the Ringlands seek to remove conditions numbered five, six, and nine.[6] The Court shall review each condition mandated by the Zoning Board in accordance with the deferential standard set forth in Section45-24-69 (d).
Zoning Boards have broad authority to require compliance with conditions upon the grant of a variance. § 45-24-43. Conditions "may, in the opinion of the board or agency, be required to promote the intent and purposes of the comprehensive plan and the zoning ordinance of the city or town." Id. Further, such "conditions shall be based on competent, credible evidence on the record [and shall] be incorporated into the decision." Id. The statute provides six examples of conditions, but does not limit zoning boards to these six. Id. § 45-24-43 provides the following examples:
 (1) Minimizing the adverse impact of the development upon other land, including the type, intensity, design, and performance of activities;
 (2) Controlling the sequence of development, including when it must be commenced and completed;
 (3) Controlling the duration of use or development and the time within which any temporary structure must be removed;
 (4) Assuring satisfactory installation and maintenance of required public improvements;
 (5) Designating the exact location and nature of development; and
 (6) Establishing detailed records by submission of drawings, maps, plats, or specifications.
In its own Zoning Ordinance, the Town of Smithfield adopted virtually identical criteria for special conditions. See
Ordinance Art. 10.8.C (3).
Our Court acknowledges and authorizes the attachment of conditions on the grant of a variance. See Woodbury v. ZoningBd. of Review of City of Warwick, 78 R.I. 319, 82 A.2d 164
(1951); Olevson v. Zoning Bd. of Town of Narragansett,71 R.I. 303, 44 A.2d 720 (1945); Morris v. Zoning Bd. of Review of Cityof Pawtucket, 52 R.I. 26, 155 A.2d 654 (R.I. 1931). Commenting on conditions, albeit conditions created pursuant to a different statute and different ordinance, the Court affirmed a zoning board's "broad discretion in fixing conditions" and discussed that conditions "must be reasonable and not arbitrary, unnecessary, or oppressive." Olevson, 71 R.I. at 307,44 A.2d at 722. In general, "[c]onditions are usually protective in nature, imposing obligations to minimize the adverse impact on neighbors that might be experienced as a result of the variance." 7 Patrick J. Rohan, Zoning and Land Use Controls, § 43.03[2] (2002).
Faced with conditions of a personal nature, the Court has specified that zoning boards are concerned with land use, not with the person using or occupying the land. Guenther v. ZoningBd. of Review of City of Warwick, 85 R.I. 37, 42, 125 A.2d 214,217 (1956). Later, the Supreme Court noted that "conditions placed upon a variance when granted are placed upon the use of the premises and run with the land." Town of Warren v. Frost,112 R.I. 217, 221, 301 A.2d 572, 574 (1973). Thus, when reviewing a condition that applies only to a particular person, the Supreme Court reversed because the condition "amounts really to a mere license or privilege to an individual and does not relate in its proper sense to the use of the property and the zoning thereof."Olevson, 71 R.I. at 308, 44 A.2d at 722.
 UNCHALLENGED CONDITIONS
The Ringlands do not challenge conditions one, two, three, four, seven, and eight of the Zoning Board decision. Although the Ringlands do not dispute those conditions, this Court shall review all of the conditions imposed by the Zoning Board in its decision.
The first condition prohibits the Ringlands from operating a business on the property. Running a landscaping business is not a permitted use on the Ringlands' property, and this condition is consistent with that prohibition. See Zoning Ordinance Art. 4. Accordingly, this condition merely clarifies the zoning restrictions set forth in the Ordinance and does not actually further restrict the Ringlands' use of their land. Even if the use variance allows the Ringlands to use the garage for equipment storage, it does not permit the Ringlands to operate a business on the property, nor can they maintain an office for that purpose. The Zoning Board's determination that a business was being operated on the property is supported by substantial competent, credible evidence in the record of business-related activities taking place on the property. See, e.g., Zoning Board Decision at 4, ¶ 16 (business answering machine in bedroom); Zoning Board Decision at 3, ¶ 4 (business deliveries made to property); Zoning Board Decision at 3, ¶ 5 (job site debris on property); Zoning Board Decision at 3, ¶ 7 ("business is conducted on the property"). This condition is supported by competent, credible evidence in the record and is well within the Zoning Board's statutory authority to "promote the intent and purposes of the . . . zoning ordinance of the town." § 45-24-43.
The second condition requires landscaping in accordance with a specific plan. The landscaping plan is an effort to limit the view of the garage. Adherence to a landscaping plan is in accord with § 45-24-43 (1), (4). The record includes ample evidence of complaints about the unsightly nature of the garage. See Aug 6, 2003 Hearing Tr. at 63 (describing garage as "an industrial, commercial steel building"); Zoning Board Decision at 3, ¶ 4 ("huge red steel building is an eyesore"); Zoning Board Decision at 3, ¶ 5 (request for arborvitae buffer); Zoning Board Decision at 3, ¶ 6 ("steel building detracts from the natural setting"). Furthermore, Scott proposed this landscaping plan as a condition during the August 6, 2003 hearing. Aug. 6, 2003 Hearing Tr. at 21. The time limit for completion is permitted by § 45-24-43 (2), and is one to which the Ringlands agree. Ringlands' Mem. at 20. Thus, requiring adherence to a landscaping plan is supported by the record and well within the Zoning Board's discretion to "minimize adverse impact[s]." Ord. at Art. 10.8.C.3 (a).
Condition three, preventing deliveries and storage of landscaping materials on the site, similarly prevents commercial traffic and unsightly materials. It responds to neighbors' complaints. See Zoning Board Decision at 3, ¶ 4, and at 3, ¶ 5. By expressly prohibiting deliveries and storage of materials on site, the imposition of this condition will serve to reduce the burden on the surrounding residential area that has been created by granting the request for a use variance. This condition also falls within the Zoning Board's discretion "to minimize adverse impact[s]," § 45-24-43 (2) and is supported by competent, credible record evidence.
Condition four prevents employee parking. Conditions related to parking "are routinely upheld if authorized and reasonable." 3 Arden H. Rathkopf, The Law of Zoning and Planning, § 60.20 (2005). The record contains evidence that a business employee parked at the subject property. See May 21, 2003 Hearing Tr. at 23. and Zoning Board Decision at 5, ¶ 3. The Zoning Board's decision to expressly prohibit employee parking is supported by the aforementioned competent, credible evidence in the record. Express prohibition of employee parking at the property will minimize the impact of the variance on the surrounding residential area; thus, it is reasonable to minimize adverse impacts in this residential area. See Ord. Art. 10.8.C.3 (a). Therefore, condition four must be affirmed.
Condition seven requires removal of a boiler. Evidence on the record demonstrates that "an old iron boiler is located on the property." Zoning Board Decision at 5, ¶ 18. Removal of an "old iron boiler" will help keep the Ringlands' property in harmony with its residential surroundings and is permissible per §45-24-43 (1). The thirty day requirement falls within the confines of Art. 10.8C.3 (b) of the Ordinance. In addition, removal of the boiler in thirty days is included as a proposed condition by the Ringlands. Since competent, credible evidence appears in the record regarding the boiler and requiring its removal does not constitute an abuse of discretion, this condition is sustained.
Finally, condition eight[7] of the Zoning Board Decision, included in Ringlands proposed list of conditions, states that "[t]his variance shall expire when Scott Ringland is no longer engaged in the landscaping business." However, "variances should not be conditioned upon the land being owned or used by a particular individual." 7 Patrick J. Rohan, Zoning and Land UseControls, § 43.03[2] (2002). "Zoning deals with land use, not the owner, operator, or occupant of the land." 3 Arden H. Rathkopf, The Law of Zoning and Planning, § 60.19 (2005). Hence, conditions must run with the land. Town of Warren v.Frost, 112 R.I. 217, 221, 301 A.2d 572, 574 (1973). Consequently, the Zoning Board's attempt to create a condition for an individual is "beyond the power of the board to impose in connection with the granting of the varia[nce]." Olevson,71 R.I. at 308, 44 A.2d at 722. Accordingly, condition eight of the Zoning Board Decision is in excess of the Zoning Board's statutory authority and must be reversed.
 CHALLENGED CONDITIONS
The Ringlands base their appeal on the Board's decision to grant their application for a use variance conditioned upon restrictions numbered five, six, and nine. The Ringlands assert that these conditions are arbitrary, unreasonable, and oppressive. Ringlands' Mem. at 14, 15. Further, the Ringlands claim that they "amount to a denial of the variance" and "completely contradict the findings of fact by the Zoning Board."Id. at 18. The Ringlands particularly oppose the date and time restrictions for removal and return of the landscaping equipment. They maintain that Scott's need to store landscaping equipment is the same during the winter and summer months. Id. at 17.
Condition five limits the removal and return of the equipment to the storage facility, the garage, to an annual cycle. This condition creates four-week windows, one in the spring and another in the fall, during which time the equipment may be removed and returned, respectively. In its decision, the Zoning Board responds to legitimate safety concerns "regarding landscaping equipment exiting and entering the property." Zoning Board Decision at 3, ¶ 8. Thus, limiting when and how often the landscaping equipment travels to and from storage "minimizes adverse impact[s] of the . . . performance of activities" in the area. Ord. at Art. 10.8.3 (a). The Zoning Board, by both statute and ordinance, may also set conditions "controlling the duration of use." § 45-24-43; Ord. at Art. 10.8.3 (b). In addition, the Zoning Board found as fact that the "landscaping equipment is stored in the garage in the winter season." Zoning Board Decision at 2, ¶ 3. Thus, the Ringlands' position that "there is no evidence on the record to support a seasonal restriction" is inconsistent with the record. Ringlands' Mem. at 18. Therefore, condition five of the Zoning Board Decision is supported by competent, credible record evidence.
The underlying variance was granted for equipment storage. Competent record evidence demonstrates safety concerns, and it is well within the discretion of the Zoning Board to restrict the return and removal of the landscaping equipment. The Zoning Board acted reasonably when it provided the Ringlands a four week window of opportunity to move equipment to and from their property. This condition limits the movement of the equipment on the cite to twice a year, thereby reducing safety concerns. Such a condition falls within the Zoning Board's authority to both "minimize the adverse impacts" of the equipment storage and "to control the duration of use" of the garage. See Ord. Art. 10.8.C.3 (a); § 45-24-43 (3). The Zoning Board's imposition of condition five, which is reasonable and not arbitrary, is hereby affirmed.
Condition six further limits the removal and return of said equipment by imposing a restriction that it be moved only between the hours of 8 a.m. and 4 p.m. The Zoning Board's authority to set this limit is the same authority it has to mandate condition five, the Ordinance's Article 10.8.C.3 (a), (b): § 45-24-43 (3). The property is in a residential neighborhood, and there is competent evidence of safety concerns in the record. Zoning Board Decision at 3, ¶ 8. It is reasonable to require that removal and return occur during a specific eight hour period. Movement of equipment during these specified times will be less disruptive to the residential neighborhood, and by requiring the movement to occur during daylight hours, it will minimize safety concerns. The Court finds that condition six is supported by competent record evidence and is within the discretion of the Zoning Board; therefore, it is affirmed.
Finally, the Ringlands challenge condition nine, which restricts the type and quantity of landscaping equipment permitted to be stored in the garage.[8] The equipment limit in condition nine contains one backhoe, one Bobcat, mowers, one dump truck, one pick-up/state body truck, and three trailers. Zoning Board Decision at 7-9. The Ringlands oppose this restriction. However, the equipment permitted in condition nine of the Zoning Board Decision includes all of Green Pastures Landscaping equipment as of the May 21, 2003 hearing. May 21, 2003 Hearing Tr. at 21 ("one dump truck . . ., my statebody, the Bobcat, backhoe, and a couple trailers, some mowers").
Record evidence reveals concerns that Scott seeks to expand his business by obtaining additional equipment. May 21, 2003 Hearing Tr. at 54-55. A neighbor, both by way of live testimony and through a submitted statement, expressed concern that "[i]nstead of one trailer and one Bobcat, he now has two trailers and two Bobcats, dump trucks, and other vehicles coming and going." Id.
By requiring compliance with this condition, the Zoning Board is, in effect, preventing additional equipment from entering the property. The Zoning Board has the discretion to minimize adverse impacts by restricting "the type" and "intensity" of the variance allowing equipment storage. Ord. Art. 10.8.C (a). By imposing this restriction, the Board established a reasonable method to limit the amount of equipment moved on and off the property. Since condition nine is supported by the record and within the discretion of the Zoning Board, it is affirmed. Therefore, this Court affirms all but one of the conditions set forth in the Zoning Board Decision.
 CONCLUSION
After review of the entire record, this Court affirms conditions one, two, three, four, five, six, seven, and nine. These conditions are all within the discretion of the Zoning Board pursuant to § 45-24-43 and Art. 10.8 (C) (3) of the Ordinance, and they are all supported by competent, credible evidence in the record.
Condition eight of the Zoning Board Decision, regarding the expiration of the variance contingent upon certain behavior of Scott Ringland, however, is in excess of the Zoning Board's authority and is affected by error of law. Therefore, condition eight is reversed. Nothing in the Zoning Board Decision, nor in the record as a whole, reflects that condition eight was an "essential or integral part" of the Zoning Board Decision. See 3 Arden H. Rathkopf, The Law of Zoning and Planning, § 60.38 (2005). Thus, this Court concludes that reversal of condition eight does not require reversal of the underlying variance. See id.
Accordingly, the Zoning Board decision with respect to conditions one, two, three, four, five, six, seven, and nine is affirmed and with respect to condition eight, is reversed.
Counsel shall submit an appropriate order consistent with this opinion.
[1] The letter is addressed to "Mr. David Ringland," but opens "Dear Ms. Ringland." The Court is satisfied that both David and Anne Ringland received the letter, as both David and Anne Ringland appealed the letter.
[2] The letter incorrectly states that the property is in an R-80 zone. It is undisputed that the property is in an R-20 zone.
[3] In the hearing transcript, it states that the proposed conditions are marked as Exhibit 21. Id. at 21. However, according to the transcript's list of Exhibits, the proposed conditions are Exhibit 21 and there is no Exhibit 22. Id. at 3. The actual list of proposed conditions, which was submitted to this Court as part of the record, reflects that the proposed conditions are marked as Exhibit 22.
[4] In its memorandum in opposition to the Ringlands' appeal, the Zoning Board suggests that the Ringlands were not entitled to a use variance of any kind since they already have a beneficial use for their property." Memorandum Submitted on Behalf of The Smithfield Zoning Board of Review, at 1. However, the Board is not a party aggrieved of its own erroneous decision. Accordingly, the Court will not review such a contention when raised in this fashion.
[5] The conditions proposed by the Ringlands mirror those contained in the June 12, 2004 preliminary order granting their motion to stay.
[6] The Zoning Board decision states "5. Each year, the equipment shall be removed from the property by April 1, plus or minus two (2) weeks, and shall not return to the property until November 1, plus or minus two (2) weeks. 6. The annual removal and return of the equipment shall occur between the hours of 8 AM and 4 PM. . . . 9. Only the following equipment shall be stored in the barn and there shall be no other equipment stored in the barn or on the property: One (1) backhoe; One (1) Bobcat; mowers; One (1) dump truck; One (1) pick-up/state body truck, Three (3) trailers." Id. at 6-7.
[7] Curiously, though the Ringlands point out that conditions must run with the land, the Ringlands include condition eight amongst their proposed conditions. Ringlands' Mem at 18. The Ringlands' assertion that condition eight exists somehow "in conjunction with" other conditions restricting removal and return of equipment is without merit. Ringlands' Mem. at 18. The two conditions restricting the date and time of removal run with the land and are not specific to Scott Ringland or to his landscaping business.
[8] In the Ringlands' memorandum submitted in support of their appeal, they propose their own list of conditions. Ringlands' Mem. at 20. The Court infers that the Ringlands challenge condition nine because they omit reference of that condition in their list of proposed conditions.