DECISION
This matter is before the Court on the appeal of Ingrid Giusti and Florence J. Rowland ("Appellants") from a decision of the Town of New Shoreham Zoning Board of Review ("Zoning Board"). The Board's decision, filed September 12, 2006, granted the application of Peter S. Wood and Lee S. Cushman ("Appellees") for certain dimensional variances in connection with a proposed administrative subdivision. Appellants are abutting property owners and constitute an aggrieved party within the meaning of G.L. 1956 § 45-24-31. Appellants filed a timely appeal to this Court on October 2, 2006. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.[1] *Page 2 
 Facts and Travel
Appellees own two abutting lots off Southeast Road in the Town of New Shoreham ("Town"), designated as Tax Assessor's Plat 8, Lots 49 and 50. Lot 49 is a substandard lot of record, while Lot 50 is in conformance with all of the Town's zoning regulations. Appellees purchased Lot 49 in May, 2002, and Lot 50 in June, 2003. Each lot is benefited from access to private rights of way leading to Southeast Road and each lot has been improved by the construction of a single-family home. However, the home on Lot 49 is currently in a state of disrepair.
Appellees applied to the Planning Board of the Town of New Shoreham ("Planning Board") for permission to reconfigure the boundaries between Lot 49 and Lot 50 through an administrative subdivision. Appellees stated that a change in the boundaries was necessary because Lot 49 is subject to erosion and the single family home located there is in danger of falling into the ocean. The proposed reconfiguration would allow Appellees to reconstruct the house on Lot 49 at a sufficient distance from the ocean so as to remove the danger of the house falling into the sea. The proposal also would have redrawn the lot lines in such a way that Lot 49 would become fully conforming with the Town's Zoning Ordinance ("Ordinance"), while Lot 50 would be rendered nonconforming. The Planning Board preliminarily approved Appellees' proposed administrative subdivision, conditioned on the Appellees' receipt of relief from the Ordinance's lot size and developable area requirements at the Zoning Board.
Appellees thereafter filed an application with the Zoning Board for the necessary dimensional variances. The Zoning Board held public hearings on the application on August 22, *Page 3 
2005; September 26, 2005; February 27, 2006; June 26, 2006; and July 24, 2006. Both Appellees and Appellants were represented by counsel at each and every hearing.
According to the hearing transcripts and documentary evidence submitted to the Zoning Board, both lots are located in the Residential A Zone ("RA Zone"), which "comprises primarily rural land mostly remote from the village center and much of which is served by narrow lanes." Ordinance § 306(A). The Ordinance requires a lot in the RA Zone to have a minimum area of 120,000 square feet, with a developable land area of 70,000 square feet for lots lawfully created on or before March 4, 1989. Ordinance §§ 306(B) and (C).[2] Developable land is defined generally as the total area of a lot, excluding land occupied by wetlands and/or coastal features, as well as land subject to easements benefiting other lots. Ordinance § 202.
The evidence adduced before the Zoning Board showed that Lot 49 contains 29,999.15 square feet, with 12,641.60 square feet defined as developable under the Ordinance.[3] Lot 50, on the other hand, has a total area of 159,820.18 square feet, 125,567.80 square feet of which is developable. As such, Lot 49 is a nonconforming lot of record, while Lot 50 conforms to the Ordinance's requirements.
The evidence before the Zoning Board also showed that parts of both Lot 49 and Lot 50 are located within the Town's Coastal Zone, which "comprises the Island's environmentally vulnerable coastal bluffs, dunes, and wetlands and the area landward one hundred (100) feet from such designated coastal features . . ." Ordinance § 314(A). The intent of the Ordinance is to afford these "critical coastal features . . . a high level of protection." Id. The construction of a single-family house is not a permitted use within the Coastal Zone. Ordinance § 314(B). The *Page 4 
evidence before the Zoning Board showed that the layout of Lot 49 is such that all but 545 square feet of the lot is located within the Coastal Zone. Although portions of Lot 50 lie within the Coastal Zone, the house on that lot is entirely outside of the Coastal Zone.
Appellees presented testimony that the single-family home on Lot 49 is in a state of disrepair and has been boarded up and left vacant for the past several years. The coastal feature on the lot is a bluff on the lot's seaward edge, from which the house is located thirty-two feet away. According to one of Appellees' expert witnesses, the site is subject to severe erosion, and the Rhode Island Coastal Resources Management Council ("CRMC") has determined that the average erosion rate is two and one-half feet per year. Summing up the situation on Lot 49, Appellees' counsel stated that "[t]he problem with the house is that in due course it is going to end up in the Atlantic Ocean." See Tr. 8/22/05 at 5.[4] Appellees indicated that they wish to demolish the dilapidated house and construct a replacement on land that is not subject to erosion.
A witness for Appellees testified that if the Zoning Board granted the greatest relief possible on the existing Lot 49 — allowing the house to be constructed directly against the property line — the house could be moved a maximum of 70 feet away from the bluff. Tr. 8/22/05 at 30. However, Mr. Tom Maguire, Appellees' project manager, stated that the entire lot was subject to erosion and that simply moving the house back from the bluff into the farthest corner of Lot 49 would not alleviate the problem. He stated that "the issue here . . . is trying to prevent having to come back to the Board at a later date to move this house further away from the bluff because of erosion issues." Tr. 7/24/06 at 34. Further questioning from Zoning Board members resulted in the following colloquy: *Page 5 
 Ms. Cyronak: I think that Richard Greene testified a number of sessions ago that a house might be possibly built right up in the corner of Lot 49 and about 70 feet off the bluff edge. . .
 Mr. Priestly: Would that require us very shortly to look at moving it again, in your opinion?
 Mr. Maguire: Well, yes. There is pretty good erosion here. What we've seen in the wet season just looking at — doing a few — monitoring or testing. If the water comes running down this road in the wet season and comes down here, we're going to lose this little area here. It hits along the dwelling and then it discharges out here and it's causing — creating a lot of erosion on that part of the bluff.
 Ms. Connor: And that [moving the house] would require a sideyard variance on all sides.
 Mr. Maguire: All kinds of variances. Id. at 34-35.
Mr. Maguire stated that the CRMC designates the area in which Lot 49 is located as subject to "extreme erosion." Id. at 36. Mr. Maguire also testified that the erosion in the area of Lot 49 is worse than erosion that would be found on the mainland, and that he had previously completed a project on an abutting lot involving the relocation of a house due to erosion of the bluff. Id. at 37.
Mr. Maguire also told the Board that both of Appellees' lots are located within the CRMC's two hundred foot jurisdiction from coastal features, and that the Appellees had applied for a preliminary determination in order to receive the CRMC's guidance as to specific locations where the house on Lot 49 could be reconstructed. A copy of this preliminary determination was entered as an exhibit and reveals that it encompasses both Lot 49 and Lot 50 and addressed a proposal to "[r]e-subdivide/re-configure two existing lots, eliminate/demolish one existing dwelling and construct a new dwelling resulting in two lots with one single family dwelling on each lot." See Applicants' Exhibit 2, 8/22/05. The preliminary determination indicates that the *Page 6 
CRMC had previously inspected Lots 49 and 50 in 2004 in connection with a prior application. The preliminary determination also identified coastal features and freshwater wetlands present on both lots.
The CRMC concluded that its staff could support a proposal to reconstruct the house on Lot 49 provided that the house was moved "further landward" in order to maximize the distance between the proposed structure and coastal features and wetlands. The CRMC also required the Appellees to submit a plan that created certain buffer zones, and finally stated that the Town "must approve the subdivision" of the lots. See Id. at ¶ 5. Mr. Maguire used these "parameters" as set by the CRMC in developing their proposed site plan, and testified that they essentially dictated the location of the proposed structure.Tr. 7/25/06 at 15-19. See also Tr. 6/26/06 at 33 (wherein Appellees' counsel represented that the proposed location provides the maximum setbacks from coastal features and wetlands "and that's how we chose the site").
To that end, Appellees submitted multiple plans for adjusting the boundaries between their two lots. While the location of the proposed house remained constant in each of the site plans, each plan would redraw the lot lines in a different way. The record reveals that the Zoning Board was concerned about ensuring that the two lots remained contiguous and that each would come as close as possible to conforming to the Ordinance's requirements. The Zoning Board rejected proposals that would have created noncontiguous, oddly shaped lots, as well as a proposal that would have resulted in two nonconforming lots. Ultimately, the Zoning Board approved a site plan that enlarged Lot 49 from a gross area of 29,999.15 square feet to 145,325.84 square feet, with 94,701.71 square feet qualifying as developable area under the Ordinance.See Applicants' Exhibit 2, 7/24/06. The plan also reduces Lot 50 from 159,820.18 square feet to 44,493.49 square feet with 43,507.69 square feet of developable area. See Id. *Page 7 
Thus, although the proposed Lot 50 is larger than the currently existing Lot 49, the proposed Lot 50 required dimensional variances from the Ordinance's minimum lot size and developable area provisions. However, recalling that the existing Lot 49 currently contains only 12,641.60 square feet of developable land, it is clear that the proposed dimensions of Lot 50 come closer to satisfying the Ordinance's dimensional requirements than do those of Lot 49. The Zoning Board ultimately found that Appellees had satisfied all of the Ordinance's criteria for the grant of the necessary variances and voted to approve the application at its meeting on August 28, 2006, in a 4-1 vote. The Zoning Board issued a written decision on September 12, 2006, in which it made numerous findings of fact in support of its approval of the dimensional variances.
This timely appeal followed.
 Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." § 45-24-69(d). This Court may reverse or modify the zoning board's decision "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or *Page 8 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. Rhode Island State Labor RelationsBoard, 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); see also Mauriciov. Zoning Board of Review of the City of Pawtucket, 590 A.2d 879, 880
(R.I. 1991). When a question of statutory interpretation is presented, an appellate court conducts its review of that issue de novo.Tanner v. Town Council, 880 A.2d 784, 791 (R.I. 2005).
As to this Court's review of a zoning board's factual findings, "in reviewing a decision of a zoning board of review, the trial justice `must examine the whole record to determine whether the findings of the zoning board were supported by substantial evidence.'" Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (quoting Tooheyv. Kilday, 415 A.2d 732, 735 (R.I. 1980)) (other quotations omitted) (emphasis added). Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance." Id. In short, a reviewing court may not substitute its judgment for that of the board's if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v. Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825
(1978)).
 Analysis
The facts underlying the instant appeal are essentially uncontested. Appellants do not challenge the Zoning Board's findings as to the nature of the properties in question, the rate of erosion on Lot 49, or the danger that erosion presents to the house on Lot 49. In fact, Appellants *Page 9 
readily concede that Appellees "would easily have been able to secure a variance for Lot 49." Appellants' Brief at 12 (emphasis in original).
However, Appellants do challenge the Zoning Board's application of the Ordinance's variance requirements to the facts as found. Appellants argue that Lot 50 comprised the subject of the application for dimensional relief and that the Zoning Board either impermissibly imputed the hardship on Lot 49 to Lot 50, or improperly viewed the properties as a whole rather than as individual lots when making its findings of hardship. As support for this position, Appellants point to language in the Ordinance that provides for a grant of a dimensional variance only upon a showing that the "hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area." Ordinance § 706(D)(1). Under Appellants' view of the Ordinance, the Zoning Board could only grant a variance for Lot 50 if presented with substantial evidence that Lot 50 suffered from a hardship due to its unique characteristics. Because the Zoning Board was not presented with any evidence as to a hardship affecting Lot 50, Appellants argue that the variance is invalid as being in excess of the Zoning Board's authority.
Appellants further contend that Appellees are ineligible for relief because any hardship that does exist as to Lot 50 was created by Appellees as it arose only in connection with their application to rearrange the lot boundaries. See Ordinance § 706(D)(2) (the hardship must not be "the result of any prior action by the applicant"). In other words, but for the proposed administrative subdivision, Appellees would have no need for dimensional relief on Lot 50. Because Appellees voluntarily applied for an administrative subdivision, Appellants argue that any hardship relating to the reconfigured lots is necessarily self-created. *Page 10 
Appellants also challenge the Zoning Board's application of the remaining variance standards to the facts of this case. Specifically, Appellants argue that the decision violated the Town's Comprehensive Plan and that the Zoning Board did not grant the least relief necessary.See Ordinance §§ 706(D)(3), (4). Finally, Appellants argue that the relief actually resulted in the transfer of development rights from Lot 49 to Lot 50 and that the Zoning Board is without authority to cause such a transfer.
In response, Appellees contend that both Lot 49 and Lot 50 comprise the subject land of their application for relief and that therefore the Zoning Board was properly able to consider both lots together in making its determination of hardship. According to Appellees, the clear intent of the Subdivision Regulations, when read in conjunction with the Ordinance and the state enabling legislation, is to allow planning and zoning boards to consider more than one property where zoning relief is required in order to accomplish an administrative subdivision. Finally, Appellees argue that the Zoning Board properly applied the standards for granting a dimensional variance to the undisputed facts and request that the Court affirm the Zoning Board's decision.
The requirements for obtaining a dimensional variance are laid out in Ordinance § 706. Section 706(D) sets forth a four prong test and states that the Zoning Board must have before it sufficient evidence to meet the following standards:
 (1) The hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 (2) The hardship sought to be avoided is not the result of any prior action by the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) The granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the Zoning Ordinance or the Comprehensive Plan upon which the Ordinance is based; and *Page 11 
 (4) That the Variance granted is the least relief necessary to remove the hardship to the applicant.
An additional requirement is that "the applicant for relief must show, by evidence upon the record, that the hardship that will be suffered by the owner of the subject property, if the dimensional variance is not granted, amounts to more than a mere inconvenience. Ordinance § 706 (E)(2). Although Appellants have challenged the Zoning Board's application of each and every variance requirement, the majority of their legal arguments center on the first two standards. Namely, the Zoning Board's initial finding of hardship pursuant to Ordinance § 706(D)(1), and whether Appellees have created their own hardship, thereby rendering them ineligible for relief under Ordinance § 706(D)(2).
 The Zoning Board's Finding of Hardship
According to Appellants, the Zoning Board's finding of hardship was based not on the "unique characteristics of the subject land" of the application for dimensional relief, but rather on the "general characteristics of the surrounding area." See Ordinance § 706(D)(1). It appears to the Court that a fundamental dispute between the parties in this case is over the determination of which lot or lots constitute the subject of Appellees' variance request within the meaning of Ordinance § 706. Appellants' reading of the Ordinance restricts the subject land to Lot 50, thus rendering the Zoning Board's consideration of the hardship on Lot 49 improper as beyond its authority under the Ordinance. Meanwhile, Appellees urge this Court to take a broader view and find that — in the context of an administrative subdivision — both Lot 49 and Lot 50 should be considered the subject land of the application for dimensional relief.
Our Supreme Court has held that "[z]oning boards are creatures of statute; hence they possess only the powers, rights, duties or responsibilities conferred upon them by the Legislature." Zeilstra v.Barrington Zoning Bd. of Review, 417 A.2d 303, 309 (R.I. 1980). Any *Page 12 
action not authorized by the State enabling legislation or the Ordinance is therefore void as being in excess of statutory or ordinance authority. § 45-24-69(d)(2); see also Franco v. Wheelock, 750 A.2d 957,960 (R.I. 2000) ("the authority of zoning boards of review is limited in scope to that expressly conferred by statue"). Thus, it is necessary for the Court to analyze the Ordinance to determine whether or not the Zoning Board was limited to a consideration of only Lot 50 or whether it was authorized to grant relief upon consideration of both lots.
Before addressing the specific provisions at issue here, the Court notes that "[i]t is a well-settled principle in this jurisdiction that the rules of statutory construction apply equally to the construction of an ordinance." Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981) (citing Town of Warren v. Frost, 111 R.I. 217, 222, 301 A.2d 572, 573
(1973); Nunes v. Town of Bristol, 102 R.I. 729, 737, 232 A.2d 775, 780
(1967)). Therefore, in construing the provisions of the Ordinance, the Court shall be guided by long-standing rules of statutory construction. When the statute at issue "is clear and unambiguous, [the reviewing court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." State v. Santos,870 A.2d 1029, 1032 (R.I. 2005) (quoting Accent Stone Design, Inc. v.Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)).
The Court turns to the relevant language of Ordinance § 706 to determine whether the subject land of Appellees' application for dimensional relief consists of both Lot 49 and Lot 50, or is limited solely to Lot 50.[5] In submitting an application for relief, an applicant is required to submit
 a plot plan drawn to scale showing the location of all lot and street lines, existing and proposed structures, wetlands, easements, utilities, wells, and sewage disposal systems of property which is *Page 13 the subject of the application. All applications shall also be accompanied by a plat map showing lot and street lines and approximate locations of structures or premises adjacent to the property which is the subject of the application, and other information as may be required by the Board. Ordinance § 706(B)(1) (emphases added).
The applicant must also submit "[t]he names and addresses of all property owners within two hundred (200) feet of all boundaries of the subject property. . . ." Ordinance § 706(B)(2).
A zoning board considering an application for a variance must then determine whether the applicant has submitted sufficient evidence to satisfy certain standards. The applicant must show that he or she is seeking relief from a hardship that is "due to the unique characteristics of the subject land." Ordinance § 706(D)(1) (emphasis added). When the applicant requests a use variance, it must be shown that "the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the Zoning Ordinance." Ordinance § 706(E)(1) (emphasis added). In the case of a dimensional variance, the applicant must show that "the hardship that will be suffered by the owner of the subject property, if the dimensional variance is not granted, amounts to more than a mere inconvenience." Ordinance § 706(E)(2) (emphasis added).
It is apparent that the Ordinance provisions addressing variance requirements do not refer to the subject "lot," but to the "subject property," the "subject land," or the "property which is the subject of the application." The Court finds that both "property" and "land" have long been regarded as highly general terms referring to real estate owned by the applicant, rather than a specific parcel. See generallyMitchell v. Warner, 5 Conn. 497, 517 (1825) ("Land, in its legal signification, comprehends any grounds, soil, or earth whatever.");Reynard v. Caldwell, 55 Idaho 342, 354, 42 P.2d 292, 297 (1935) ("the term (land) may also be used interchangeably with `property. . .'") (parentheses in original)). *Page 14 
In contrast to land or property, a "lot" is much more narrowly defined as either
 a. The basic development unit for determination of lot area, depth, and other dimensional regulations; or b. A parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title. Ordinance § 202(A)(102).
Thus, unlike the general terms "land" or "property," a "lot" is a specific piece of land or property whose boundaries are delineated in a legal instrument such as a deed or a tax assessor's plat. Seegenerally Harmel Corp. v. Zoning Bd. of Review of Tiverton,603 A.2d 303, 307 (R.I. 1992) (wherein our Supreme Court determined that the term "premises" is broader than the phrase "lots of record" and therefore an accessory use may be located on the same premises as the principal use even though such accessory use is on a separate lot of record).
Given the foregoing, it is clear that the literal language of the Ordinance does not restrict the definition of "subject land" to a singular lot. Had the legislature intended to limit the scope of the Zoning Board's consideration of an application for a variance to a single lot, it could have easily drafted the enabling act to require evidence as to a subject "lot" instead of subject "land" or "property." The fact that the legislature has not done so lends credence to Appellees' contention that the Zoning Board has the authority to consider both lots together in granting dimensional relief.
Moreover, it is important to recognize that the application for relief was presented to the Zoning Board within the context of an administrative subdivision. An administrative subdivision constitutes a "[r]e-subdivision of existing lots which yields no additional lots for development, and involves no creation or extension of streets. Such re-subdivision shall only involve divisions, mergers, mergers and division, or adjustment of boundaries of existing lots." *Page 15 
Subdivision Regulations § 201(2).[6] Thus, by its very nature, an administrative subdivision involving the adjustment of boundaries between existing lots requires consideration of more than a single lot.
Further examination of the Subdivision Regulations reveals that the Zoning Board is plainly authorized to grant dimensional relief in the context of an administrative subdivision. The Subdivision Regulations provide that "[w]here an applicant requires both a variance . . . and Planning Board approval, the applicant shall first obtain an advisory recommendation from the Planning Board. . . ." Subdivision Regulations § 307(A). "The applicant shall then obtain conditional Zoning Board relief, and then return to the Planning Board for all subsequent required approvals." Id.
The Court finds that the plain language of the Subdivision Regulations contemplates a situation in which an adjustment of boundaries between existing lots produces lots that do not conform to all of the Ordinance's dimensional requirements. If this were not so, the Subdivision Regulations would not allow the Zoning Board to grant a variance in connection with an administrative subdivision. Therefore, the Court finds that when the Zoning Board is presented with an application for a variance that arises out of a proposed administrative subdivision to adjust the boundaries between existing lots, the Zoning Board is authorized by necessary implication to consider the facts relating to the properties as a whole. In other words, all of the properties involved become the "subject land" of the application for a variance within the meaning of Ordinance § 706(D)(1). *Page 16 
Here, Appellees appeared before the Zoning Board due to the fact that their proposed administrative subdivision would adjust the boundaries between Lot 49 and Lot 50 in such a way so as to render Lot 50 dimensionally nonconforming to the Ordinance's lot size and developable land area requirements. Because the application was connected to Appellees' proposed administrative subdivision, the Zoning Board was necessarily required to consider together all of the property involved. Therefore, the Court finds that Lot 49 and Lot 50 together comprise the land that is the subject of the request for relief for purposes of Ordinance § 706(D)(1). It follows that the Zoning Board did not commit an error of law when it considered the two lots as a whole.
After considering the properties together, the Zoning Board ultimately found that the hardship complained of results from the presence of severe erosion on Lot 49 caused by its location on the island and the presence of the coastal feature. Appellants do not contest this finding. At the Zoning Board's hearings, Appellees introduced uncontroverted testimony that such erosion will eventually cause the existing house to fall into the sea. The Court therefore defers to the Zoning Board's factual finding that the hardship results from "severe erosion on the site" and concludes that the Zoning Board properly found that Appellees had satisfied Ordinance § 706(D)(1).
 Existence of a Self-Created Hardship
The second standard to be met in obtaining a variance requires a showing that the hardship was not self-created. Ordinance § 706(D)(2). Appellants argue that the hardship complained of is not the presence of severe erosion, but the fact that the proposed Lot 50 fails to conform to the Ordinance's lot size and developable land requirements. According to Appellants, Appellees voluntarily applied for an administrative subdivision that would create a nonconforming lot and have therefore created their own hardship for which they now seek relief. *Page 17 
As support for this position, Appellants have cited the Court toSciacca v. Caruso, 769 A.2d 578 (R.I. 2001), for the proposition that a dimensional variance should be denied where the alleged hardship results from an applicant's earlier creation of a nonconforming lot. The petitioner in that case owned two substandard lots that were merged by operation of law. Id. at 579. The petitioner then went before the planning board and obtained a subdivision which restored each lot to its prior undersized dimensions. Id. The Supreme Court noted that this subdivision was illegal because it conflicted with certain provisions of the zoning ordinance. Id. at 580, 584. After subdividing her lots, the petitioner appeared before the zoning board and requested a variance from the zoning ordinance's minimum-area and frontage requirements so that she could construct a house on the vacant lot. Id. at 580. The zoning board eventually approved the variance application and the Superior Court affirmed. Id. at 581.
Our Supreme Court reversed, stating that the zoning board "improperly ignored the `prior action of the applicant' in creating the alleged hardship." Id. at 584. The Court noted that the petitioner's own "prior action caused the planning board to subdivide her single-conforming lot into two substandard-sized parcels, thereby creating the undersized lot in question." Id. "This `prior action' resulted in the self-created hardship that [petitioner] later used as the basis for her variance request." Id. Thus, the Court ultimately held that the petitioner was not eligible for dimensional relief because it was only necessary for her to obtain a variance from minimum-area and frontage requirements due to her own earlier, illegal subdivision activities that created the undersized lot. Id.
This Court has carefully considered the Sciacca case and finds it distinguishable from the facts presented in the instant appeal. In this case, Appellees have applied for a variance in connection with their request for an administrative subdivision. The subdivision cannot be *Page 18 
approved until the Zoning Board grants dimensional relief. Subdivision Regulations § 307(A). As such, there has been no "prior action" by Appellees; rather, their request for a variance is concurrent with their application for an administrative subdivision. Otherwise stated, the variance at issue here is to allow Appellees to create a dimensionally nonconforming lot instead of one that alleviates an alleged hardship that is a result of that lot's creation.
Even more importantly, Appellants' argument would disregard entirely the crucial fact that the variance is being requested as part of an administrative subdivision. Appellants' reasoning would compel a zoning board in every such case to find that an applicant's own "prior action" of applying for an administrative subdivision had caused the need for a variance. This interpretation would nullify the explicit provisions of the Subdivision Regulations that allow an applicant to obtain a dimensional variance in connection with an administrative subdivision. Subdivision Regulations § 307(A). The Court will not interpret the Ordinance to lead to such an absurd result. Thompson v. EastGreenwich, 512 A.2d 837, 841-842 (R.I. 1986) (wherein the Supreme Court stated that it will not interpret a statute in such a way as to lead to an absurd result or that would nullify its underlying purposes).
It additionally appears that Appellants have lost sight of the hardship that Appellees seek to alleviate. The hardship here is the presence of severe erosion on Lot 49 and the concomitant threat to the structure located there. The variance is being requested as a direct result of, and in conjunction with, the proposed administrative subdivision that would remove the hardship to Appellees' property. Thus, this is not a case like Sciacca in which Appellees have first subdivided property and only then made a subsequent application to the Zoning Board for dimensional relief. *Page 19 
It may very well be that Appellants' argument would carry some force in a situation similar to Sciacca in which the Appellees request further relief as a result of the size of the newly reconfigured Lot 50. However, that factual situation is not before the Court and the Court declines to speculate as to the outcome in such a hypothetical case. Rather, it is enough to say that the Zoning Board's finding that the Appellees did not create the hardship complained of — the naturally occurring severe erosion on Lot 49 — was supported by substantial evidence.
 Remaining Arguments
Turning to the third requirement for obtaining dimensional relief, Appellees must introduce substantial evidence to show that the requested relief would not impair the intent or purpose of the Town's Ordinance or Comprehensive Plan. Ordinance § 706(D)(3). Appellants have argued that granting the requested relief violates the Town's Comprehensive Plan because the variance results in the creation of a nonconforming lot, whereas one of the avowed purposes of a comprehensive plan is to reduce and eventually eliminate nonconformance. Appellants urge the Court to find that the relief granted here is contrary to what they term the "consistency doctrine" enunciated in § 45-22.2-13(c). See G.L. §45-22.2-13(c) ("For those municipalities with comprehensive plans approved pursuant to this chapter all municipal land use decisions shall be in conformance with the approved municipal comprehensive plan.").
In support of their contentions, Appellants cite to the transcript of the Zoning Board hearings in which a witness for the Appellees testifies that he agrees with a statement by Appellants' counsel that "it's not a feature of the Comprehensive Plan of the Town of New Shoreham that new lots be created in the RA zone that have half or less than half of the area that's provided for in the Zoning Ordinance." Tr. 8/22/05 at 68-69. Appellants then argue that the Zoning Board's decision is "in contravention of both the Comprehensive Plan and the Zoning *Page 20 
Ordinance." Appellants' Brief at 21. However, Appellants have neither cited the Court to specific provisions of the Comprehensive Plan nor provided this Court with a copy of the Plan or of any provision of the Plan that the Zoning Board's decision allegedly contravenes.
"Simply stating an issue for appellate review without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." Wilkinson v. State Crime Lab.Comm'n, 788 A.2d 1129, 1131 n. 1 (R.I. 2002). Here, Appellants have raised the issue of conformity with the Comprehensive Plan but have not briefed the issue beyond a citation to the Zoning Board's hearing transcript combined with a conclusory assertion that the decision violates provisions of the Comprehensive Plan. Therefore, the Court finds that Appellants have not properly briefed the issue and have waived any argument based on inconsistency with the Comprehensive Plan.[7]
The final prong of Ordinance § 706(D)(4) requires that the relief granted be "the least relief necessary to remove the hardship to the applicant." As previously discussed, the presence of severe erosion on Lot 49 along with the prospect of the structure falling into the ocean constitutes the hardship in this case. Appellees presented the Zoning Board with evidence that the entirety of Lot 49 is subject to severe erosion and that even if the Zoning Board allowed Appellees to build along the currently existing lot lines, the house would still be in danger of falling into the ocean. The uncontroverted evidence showed that any relief that is confined to Lot 49, as it currently exists, would not relieve Appellees of this hardship. The Court therefore finds that Appellees' proposed administrative subdivision provides the only mechanism that can *Page 21 
alleviate their hardship. Thus, the Court concludes that the Zoning Board's finding that Appellees had applied for the least relief necessary in accordance with Ordinance § 706(D)(4) was supported by substantial evidence.[8]
The final requirement for obtaining a dimensional variance is enumerated in Ordinance § 706(E)(2). That section provides that, before being entitled to a dimensional variance, "the applicant for relief must show, by evidence upon the record, that the hardship that will be suffered by the owner of the subject property, if the dimensional variance is not granted, amounts to more than a mere inconvenience." Ordinance § 706 (E)(2).
Notwithstanding the language of the Ordinance, Appellants have argued that Appellees are not entitled to dimensional relief absent a showing that they had no other reasonable alternative to allow them to enjoy a legally permitted beneficial use of Lot 50 short of the proposed administrative subdivision. See Appellants' Brief at 15. This argument misses the mark because it would have Appellees meet a higher burden than that which is placed upon them by the Ordinance. Our Supreme Court has recognized that "an applicant need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience."Lischio v. Zoning Board of Review of North Kingstown, 818 A.2d 685, 692
(R.I. 2003).
Here, all of the evidence showed that the house on Lot 49 will eventually fall into the ocean if Appellees are not able to adjust the boundaries between Lot 49 and Lot 50 and rebuild the house in a location that is not threatened by erosion. While our Supreme Court has not definitively defined the phrase "more than a mere inconvenience," a structure's falling into the *Page 22 
ocean due to erosion would cause Appellees more than a mere inconvenience. Therefore, the Court finds that the Zoning Board's finding that Appellees had satisfied Ordinance § 706(E)(2) was based upon substantial evidence.
Appellants have also argued that the Zoning Board's action was beyond its authority as it essentially functioned as a transfer of development rights. This argument is without merit given that the Zoning Board's grant of dimensional variances was within its statutory authority. Moreover, the Court declines to give further consideration to this issue because Appellants failed to raise it before the Zoning Board. SeeRidgewood Homeowners' Ass'n. v. Mignacca, 813 A.2d 965, 977 (R.I. 2003) (wherein the Supreme Court held that a party that failed to argue before a zoning board that a dimensional variance was not required in the first instance could not raise that argument for the first time on appeal to the Superior Court).[9]
 Conclusion
Given all of the foregoing, the decision of the Zoning Board is affirmed. The Court finds that the Zoning Board's decision was based on a proper interpretation of the law and that the Zoning Board did not act in excess of its statutory authority or in violation of Ordinance provisions. Furthermore, this Court is satisfied that the Zoning Board's decision was supported by substantial evidence and is therefore not clearly erroneous, arbitrary and capricious, or an abuse of discretion. Substantial rights of Appellants have not been prejudiced.
Counsel shall submit an appropriate order for entry in accordance with this Decision on or before May 28, 2008.
[1] Appellants failed to comply with G.L. 1956 § 45-24-69.1(a), which requires that an aggrieved party provide notice of its appeal to this Court to all persons that were originally entitled to notice of the hearings before the Zoning Board. An aggrieved party must then file an affidavit with this Court within twenty days after serving notice of its appeal certifying that such persons have been served with notice of the appeal. § 45-24-69.1(d). Here, there is no evidence that Appellants served notice in accordance with § 45-24-69.1(a), nor does the Court file contain the affidavit required by § 45-24-69.1(d). Although the requirements set forth in § 45-24-69.1 are not jurisdictional in nature, Appellants' failure to comply with those requirements provides this Court with discretion to dismiss their appeal. See Jeff AnthonyProperties v. Zoning Bd. of Review of the Town of North Providence,853 A.2d 1226, 1231-32 (R.I. 2004) (holding that dismissal is permissible only after giving due consideration to the reasons for a party's failure to comply with § 45-24-69.1 as well as any prejudice to the party that was not properly notified). Given that the Appellees have not objected to Appellants' violation of statutory provisions, this Court finds that the Appellees have not been prejudiced thereby. The Court also finds that Appellees are in a position to adequately protect the interest of any individuals who were entitled to, but did not, receive notice of this appeal and wished to express support for the Zoning Board's decision. Therefore, it does not appear that any such parties have been prejudiced by Appellants' failure to comply with the notice requirements of § 45-24-69.1. Given the foregoing, the Court declines to exercise its discretion to dismiss the appeal.
[2] Lots lawfully created after March 4, 1989, are required to have 90,000 square feet of developable land.
[3] According to separate Subdivision Regulations, the developable land area is only 545.60 square feet. However, the distinction between developable land as defined by the Ordinance and the Subdivision Regulations is not dispositive of the issues presented and therefore is not material to the resolution of the instant appeal.
[4] Appellees were represented by Barry Kusinitz, Esq. at the first hearing. Appellees were represented by Joseph Priestly, Esq. at all subsequent hearings.
[5] The Ordinance mirrors the language found within General Laws § 45-24-41, which requires a municipal zoning ordinance to include certain provisions relating to the granting of variances. The Court refers to the Ordinance's provisions because Appellants have not argued that the Ordinance is inconsistent with state law.
[6] Note that a re-subdivision is defined, in part, as "[a]ny change of . . . a lot recorded in the Land Evidence Records . . . For the purposes of these regulations any such action will constitute a subdivision." Subdivision Regulations § 201(49). Therefore, a re-subdivision involving the adjustment of lot boundaries,i.e. an administrative subdivision, is the functional equivalent of a subdivision.
[7] Nevertheless, the Court notes that the Planning Board granted preliminary approval of the application, finding it to be in conformance with the Comprehensive Plan. Testimonial evidence before the Zoning Board also indicates that another policy of the Comprehensive Plan is to remove structures from the Coastal Zone, which is exactly what Appellees' proposal would accomplish. As such, it appears that the granting of dimensional relief could in fact be consistent with certain provisions of the Comprehensive Plan. However, further analysis is impossible given the inadequacy of the record on this issue.
[8] The Court also notes that Appellees presented the Zoning Board with multiple site plans for approval. The Zoning Board rejected several proposals that would have either created noncontiguous lots or redraw the lot lines to create two nonconforming lots. The plan that the Zoning Board ultimately approved resulted in two contiguous lots, with two structures that will comply with all dimensional requirements, and that renders Lot 50 closer to being in conformance with the Ordinance's lot size and developable area requirements than Lot 49 had been. Thus, it is clear that the Zoning Board approved a plan that would alleviate Appellees' hardship while requiring the minimum possible variances from the Ordinance's dimensional requirements.
[9] The Court additionally notes that Appellees' brief mentions that there is a shed on Lot 50 that requires a rear line setback variance.See Appellees' Brief at 11. The record shows that the Zoning Board was not presented with a variance request relating to this structure. Therefore the shed's possible noncompliance with the Ordinance is not before the Court.