### STATE
### v.
### F. David FENG.
No. 81–190–C.A.

Supreme Court of Rhode Island.

Jan. 29, 1982.

Dennis J. Roberts, II, Atty. Gen., Alyssa L. Talanker, Sp. Asst. Atty. Gen., for plaintiff.

John Tramonti, Jr., Providence, for defendant.

## OPINION

KELLEHER, Justice.

This is an appeal from the imposition of a two-year term following revocation of a deferred sentence. The defendant claims that the revocation and sentencing violated the due-process rights guaranteed him by the Fourteenth Amendment of the United States Constitution. We agree.

In the fall of 1975 the state indicted F. David Feng (Feng) on four drug-related charges. Feng pled *nolo contendere* to the charges, received a one-year sentence on count 3 of the indictment, and entered into a deferred-sentence agreement with the attorney general's office on the remaining three charges.[1] By the terms of the agreement, imposition of sentence on the counts was deferred "during the good behavior of the defendant * * *."

Later, in June of 1977, Feng applied for postconviction relief, seeking to vacate his pleas on the grounds, among others, that they were not intelligently and voluntarily made.

A week prior to commencement of the postconviction-relief hearing, Feng was before the court on a collateral matter with other defendants, and he was cautioned by the trial justice as follows:

"[T]he Court will take pains to say now to the defendants, in order that they may not be surprised and to give them fair notice, that in these proceedings, which are to begin on Wednesday, the Court will remind the defendants that in addition to the term of incarceration, the Court has deferred sentence on all of the other counts. Should the Court be persuaded that your application, Mr. Feng, has been filed in bad faith, or if there's any imputation of perjury on the part of any defendant, the Court wants each defendant to know that it will remove the deferred sentence and add an additional sentence of incarceration. I say that now, gentlemen, so that none of you will be deluded and treat lightly with the Court.

"When these proceedings begin, the Court presumes that they will be conducted in good faith and that the truth will be spoken. It goes without saying, that if the Court is persuaded that the Defendant Feng did not intelligently and voluntarily waive his rights, the Court will grant the application. However, the Court has prefaced his remarks to impress on you, Mr. Feng especially, since you are applying for post-conviction relief, and such of the defendants as may

---

1. Deferred-sentence agreements are governed by G.L. 1956 (1969 Reenactment) § 12–19–19.

be called to testify, that we expect truthfulness in every respect."

During the hearing, Feng took the stand in his own behalf and testified that he had misunderstood the factual elements of the crimes to which he had pled. He also gave testimony on the quantity and nature of the legal advice he had received from counsel before he had entered his plea. The only other witness testifying at the hearing was the lawyer who had advised Feng on his plea and whose testimony conflicted, to some extent, with Feng's.

At the conclusion of the hearing, the trial justice ruled adversely to Feng on his application for postconviction relief [2] and by way of explanation commented that he found Feng's testimony "marked by indirection, evasiveness and to use the most charitable word the court can think of, circumlocution." Representatives of the committing squad were then summoned, but just before they arrived to return Feng to the Adult Correctional Institutions, the trial justice once again addressed Feng:

"I haven't finished. The Court last week sought to make it plain that of course it would discharge its obligation if Mr. Feng sustained his application, that it would grant it. The Court also made it plain that if it felt there was any bad faith on the part of Mr. Feng or if there was any imputation of perjury, it would consider removing or setting aside any probation. The Court concludes here that there was no basis whatsoever for Mr. Feng's application. The Court considers that a person who has been placed on a deferred sentence is placed on probation for five years. He is required to conduct himself in the kind of behavior which a probationer is expected.

"This Court feels that when Mr. Feng presented this application for post-conviction relief, he did so well knowing that there was no basis for it. And in this Court's judgment, he has impeded the administration of justice in this court. And for this reason, Mr. Feng, with regard to Count I of the indictment, I am

revoking the probation and I am sentencing you to two years in the Adult Correctional Institutions to be served consecutively to the term that you are presently about to serve."

Feng claims that the revocation of his deferred-sentence status and the imposition of a two-year term violated due process.

The first question before us is: what process is due an individual before he can be found in violation of a deferred-sentence agreement? Our response begins with a review of the relevant case law.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court articulated the procedural requirements to be observed by the state prior to revocation of parole. Remarking that the full panoply of due-process rights protecting a defendant in a criminal trial are not mandated before parole revocation, the Court nonetheless found that due process demanded, at a minimum:

"(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id.* at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499.

*Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), extended the hearing rights spelled out in *Brewer* to the alleged probation violator, with the Court commenting, "Probation revocation, like parole revocation, is not a stage of the criminal prosecution, but does result in a loss of liberty." *Id.* at 782, 93 S.Ct. at 1759–60, 36 L.Ed.2d at 661–62.

2. Feng's appeal of this ruling was denied. *See*  *State v. Feng*, R.I., 421 A.2d 1258 (1980).

Although Feng was neither a parolee nor a probationer, he was, by virtue of his deferred-sentence agreement, similarly situated. In fact, this court has recognized that an alleged violator of a deferred-sentence agreement is entitled to the same constitutional protection as that afforded a parolee or a probationer at a revocation hearing. *See State v. Bettencourt*, 112 R.I. 706, 708–09 n.2, 315 A.2d 53, 54 n.2 (1974).

We turn now to the question of whether Feng was the beneficiary of the six hearing rights enumerated in *Morrissey*. In disposing of Feng's appeal, we need go no further than to consider the first of the six, written notice of the claimed violations. We should recall that on the day he was found a violator, Feng was before the court on the matter of an application for postconviction relief. It was the statements made by Feng during this hearing that apparently led the trial justice to find that he had violated the terms of his deferred-sentence agreement.[3] As a result, Feng learned for the first time that he was alleged to have violated those terms at the precise instant that the judge pronounced him a violator, no earlier. Irrespective of the fact that the notice of violation was oral, it certainly came too late in the day to afford Feng any opportunity to rebut the allegations. Without speculating about what Feng's defense might have been, we must note that he had a right to present it which was summarily foreclosed by the summoning of the committing squad. *Morrissey v. Brewer* sets out *minimum* due-process requirements, and when Feng was found a violator without notice, his constitutional rights were denied. The state maintains that Feng received adequate notice when, a week prior to hearing, the court cautioned him that perjury or bad faith might constitute grounds for revocation of his deferred sentence. We concede that the warning Feng received might possibly have served as no-

tice of the conditions by which he was to abide during the period his sentence was deferred. *See United States v. Dane*, 570 F.2d 840 (9th Cir. 1977). But the warning did not satisfy the altogether different *Morrissey* notice requirement that is designed to alert an individual that charges that a violation has occurred have been leveled against him, which charges he should prepare to rebut if he wishes to maintain his liberty.

Because Feng was first notified that he was an alleged violator at the same moment that he was adjudged a violator, he was deprived, for all intents and purposes, of a hearing on the violation charges. Due process, if it is to have meaning, must require more than a hearing that begins and ends simultaneously:

> " '[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.' * * * 'The fundamental requisite of due process of law is the opportunity to be heard,' * * * a right that 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to [* * *] contest.' " [Citations omitted.] *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725, 737 (1975).

We find that the trial justice's revocation of Feng's probationary status and his subsequent imposition of the two-year term were in violation of the Fourteenth Amendment.

Consequently Feng's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings in accordance with this opinion.

---

3. We use the modifier "apparently" because the record does not elucidate the precise reasons underlying the revocation decision. We have quoted earlier in this opinion the language employed by the trial justice in elaborating the reasons for his actions, and it seems to us equivocal mentioning bad faith, perjury, *and* the obstruction of justice. In passing, we note that *Morrissey* requires a statement of the evidence relied on by the factfinder, which statement is lacking in this instance.