DECISION
Before this Court is an administrative appeal filed by Plaintiff Robert M. Frost ("Frost") from a decision of Defendant Rhode Island Coastal Resources Management Council ("C.R.M.C.") to deny his request for an extension of a previously issued C.R.M.C. assent. Although this particular case is only several years old, Frost has been litigating strikingly similar issues in the state courts of Rhode Island since the early 1970's. The Supreme Court of Rhode Island has considered appeals involving Frost and the C.R.M.C. or the Town of Warren three times.[1]
This dispute has its genesis in an assent issued by the C.R.M.C. in 1996 granting Frost permission to construct a residential dock. In 2002, Frost applied for and received an assent modification from the Executive Director of the C.R.M.C. that modified slightly the permissible dimensions of the dock, in addition to permitting it to be used for certain commercial purposes. Just before the expiration of this modified assent, Frost applied for an extension of the assent. The C.R.M.C. then conducted hearings and investigations of Frost's property and, finding substantial non-compliance with its *Page 2 
previous assent, denied the request for extension. Plaintiff Frost now appeals to this Court, alleging substantial malfeasance as well as illegal and unconstitutional behavior on the part of the C.R.M.C. in considering his application. A hearing justice of this Court permitted Intervenor Kickemuit River Council ("Intervenor") to intervene in light of its participation in the proceedings below and its substantial interest in the outcome of the proceedings. After thorough consideration of the parties' memoranda and the ample record of the proceedings before the C.R.M.C., this Court affirms the decision of the C.R.M.C. and dismisses Frost's appeal in its entirety.
 I. FACTS AND PROCEDURAL HISTORY
The dispute over the property at issue in this case, located at 15 Read Avenue in Warren, Rhode Island (the "Property"), dates back to 1967, shortly after Frost acquired the Property from Donald Tripp, Frost's predecessor in title. In 1961, before his sale of the Property, Tripp applied to the Zoning Board of Review for the Town of Warren for a zoning variance. He sought permission to: (1) use certain of his lands, including the Property at issue, for "boat repair, construction, storage, sale of boats and accessories and related services," and (2) make certain alterations including the "construction of drainage ditches to drain the area and to permit small boats to dock therein and also the construction of a cement or cinder block building with railway." (Intervenor's Mem., App. 3, Ex. 1). The Zoning Board granted his application, and Tripp began commercial activity on the Property, including the storage, repair, and rebuilding of boats.
Tripp never followed through, however, on his plans to construct the cement or cinder block building. In 1966, the Town of Warren amended its Zoning Ordinance to *Page 3 
provide that variances, such as that granted to Tripp in 1961, expire after six months if not acted upon. A year later, Tripp sold the Property to Frost.
In December 1967, several months after acquiring the Property, Frost filed an application with the Rhode Island Department of Environmental Management ("D.E.M.") seeking permission to dredge a basin and canal in the Kickemuit River near the Property and to build a pier jutting into the River.[2] This application spawned the first wave of litigation over the Property. In early 1970, in response to this application, the Laurel Park Improvement Association filed a Complaint with the Town objecting to Frost's proposed dredging operation. The Town referred the Complaint to its Town Solicitor, who determined that the Property was limited to residential use because the 1961 variance had expired and recommended that the Town inspect the Property to ensure that it was not being used for commercial activity. (Intervenor's Mem., App. 3, Ex. 3 (Opinion of Town Solicitor)).
Pursuant to this Opinion, the Town inspected the Property. After discovering several violations of the Zoning Ordinances of the Town of Warren, as interpreted by the Town Solicitor, the Town filed in the Rhode Island Superior Court a Complaint against Frost. It sought to enjoin Frost from using the Property for commercial dredging and an order directing the removal of certain items from the Property that the Town deemed inappropriate under the Zoning Ordinances.See Town of Warren v. Frost, C.A. No. PC 70-2684 (R.I. Super. Sept. 17, 1970).[3] On September 14, 1971, a hearing justice of this *Page 4 
Court issued a permanent injunction against Frost, restraining and enjoining him from using any of his lots for dredging or as a place of deposit for the equipment identified in the Complaint.Id. He also ordered the removal of all of the equipment identified in the Complaint no later than November 1, 1971.Id. Frost appealed this decision to the Rhode Island Supreme Court and obtained an order from the Supreme Court staying the decision during the pendency of the appeal, provided that he neither expand his commercial operation nor bring additional equipment onto the Property. Id.
On March 12, 1973, the Rhode Island Supreme Court issued its decision regarding the appeal, finding in favor of Frost and vacating the judgment of the Superior Court. See FrostI, 301 A.2d 572. The Supreme Court reasoned that the 1966 amendment to the Town's Zoning Ordinances, both on its face and according to well-established rules of statutory construction, did not apply retrospectively such that the 1961 variance that had been granted to Frost's predecessor in interest had not expired.Id. at 575. Additionally, although admittedly Tripp failed to construct the cement or cinder block building that was the subject of the variance, the Supreme Court found that the variance was not conditioned on the construction of the building, but merely permitted it as an additional use of the Property.Id. at 574-75. According to the Supreme Court, therefore, the variance was still in force, and Frost could operate his business in accordance with its provisions. Id. at 575. Suspecting that the activity actually occurring on the Property might exceed the use approved by the variance, however, the Supreme Court remanded the case to the Superior Court for a determination of whether Frost was in compliance with the variance. Id. *Page 5 
Upon remand, the Superior Court found that Frost's activities on the Property fit within the uses permitted by the variance, reasoning that:
 the services of dredging, dock-building and dock maintenance are essential and necessary for the maintenance of a facility for the repair, construction, storage and sale of boats, and that equipment and machinery such as that found on the subject property are of the type in common use to carry out such services, and many marine facilities own such equipment and machinery; and that in the alternative, dredging and dock-building services and the equipment and machinery used therein could be considered to be related services in the language of the variance. That is, services related to boat repair, storage, sale and construction.
Frost II, 350 A.2d at 610. It therefore entered judgment in favor of Frost on April 15, 1974, from which the Town promptly appealed to the Supreme Court. Id.
On appeal, the Supreme Court found in favor of the Town and against Frost. Id. at 611. It explained that the 1961 variance only permitted use of the property for "`boat repair, construction, storage, sale of boats and accessories and other related services.'"Id. at 609 (Frost II) (quoting Frost I,301 A.2d at 575). Noting that the Town had found "`[three] small boats, a molted winch, loader, dozer, tag-a-long trailer, air compressor, clamshell, and a dragline bucket, assorted lumber and blocking, cement mixer, two large H2O pumps, two trucks both registered, and the yard was in an orderly fashion,'" id., the Supreme Court "questioned whether the equipment and machinery kept on the premises were such as would be necessary for the repair, construction, and storage of boats." Id. Given Frost's testimony that "the large bulk of his work to date had consisted of dredging, dock-building and repair for other boat owners and owners of piers, docks and moorings in the area," and that "he had not yet done any substantial work in the area of boat repair, construction, storage and sale of boats and accessories,"id. at 610, the *Page 6 
Supreme Court found that Frost was not in compliance with the terms of the variance previously granted to Tripp by the Town.Id. at 611. It thus reversed the Superior Court, reasoning:
 On this record it is clear that the primary use of this land is presently devoted to housing Mr. Frost's dredging, pile driving and dock-building business. The land is not being used for any of the uses contemplated by the 1961 variance, namely: "boat repair, construction, storage, sale of boats and accessories and other related services. . . ." Therefore, we cannot say, on this record, that the dredging, pile driving and dock-building activities, and the storage of the equipment and machinery described above, are essential, or related to any permitted use then and now being conducted on the subject land.
Id. The Supreme Court remanded the case to the Superior Court with instructions to enter judgment for the Town and to issue an injunction enjoining Frost from "using the land for the business of dredging, pile driving and dock-building until further order of that court." Id.
On March 18, 1976, pursuant to the directives of the Supreme Court, the Superior Court issued a permanent injunction acknowledging the continuing validity of the 1961 variance and enjoining Frost from "using any [of the Property] for the business of dredging, pile driving and dock building and from depositing or storing on said land the equipment and machinery used solely in said business . . . with the exception of a small crane used for hauling boats." See Town of Warren v. Frost, C.A. No. PC 70-2684 (R.I. Super. Sept. 17, 1970) (Final Judgment dated March 18, 1976); (Intervenor's Mem., App. 3, Ex. 7). This injunction is still in effect.
Several years after the entry of this Final Judgment, Frost again sought to construct the pier and carry out the dredging for which he initially requested permission *Page 7 
in his 1967 application to D.E.M. By this time, the C.R.M.C. had been established and had assumed jurisdiction over Frost's application. When Frost appeared before the C.R.M.C. in 1979 to seek approval of his then twelve year old application, however, the C.R.M.C. informed him that it was unable to grant his requested assent because of the outstanding permanent injunction. The C.R.M.C. found that Frost's proposed use of the Property would exceed the authority granted by the variance. To pursue his application before the C.R.M.C., therefore, the agency advised Frost that he first would be required to submit a new application to the Town's Zoning Board for special permission to construct a pier and carry out dredging on the Property and be granted a variance allowing him to do so. Frost never submitted the requisite additional application.
In 1982, in lieu of submitting a new application to the Town's Zoning Board, Frost filed a Complaint against the C.R.M.C. in the Superior Court. See Frost v. C.R.M.C., C.A. No. PC 82-981 (R.I. Super. Mar. 12, 1982). Frost alleged that the failure of the C.R.M.C. to act on his application constituted action of an administrative agency that he could contest on appeal. Id.
The C.R.M.C. filed a motion to dismiss Frost's Complaint for lack of subject matter jurisdiction on the grounds that the C.R.M.C. had taken no final agency action and that Frost had failed to exhaust his administrative remedies. Id. The Superior Court agreed with the C.R.M.C. and dismissed the action. Id. When Frost filed a petition for certiorari to challenge this dismissal in the Rhode Island Supreme Court, it denied certiorari, but added that it "fully anticipate[s] . . . that the Coastal Resources Management Council will render its decision on [Frost's] pending 1967 application within a reasonable time." Frost v.C.R.M.C., 469 A.2d at 369. *Page 8 
After this decision, the C.R.M.C. held a public hearing on Frost's pending 1967 application. At that hearing, the C.R.M.C. deferred decision on the application until the Division of Water Resources of D.E.M. could issue a water quality certificate which the regulations of the C.R.M.C. require as a prerequisite to granting any application.[4] The Chief of the Division of Water Resources twice refused to issue the water quality certificate because the facility Frost sought to construct would be large enough to accommodate boats with marine toilets that could allow waste-water discharges into the surrounding waters in contravention of state law. Frost appealed the Division's rejection of his water quality certificate to the Adjudication Division of D.E.M., which upheld this rejection. Without a water quality certificate, or any other apparent appellate remedy, Frost could not pursue his 1967 application. The C.R.M.C. finally cancelled Frost's 1967 application in 1994.
Also in 1994, the General Assembly amended the C.R.M.C.'s enabling statute to allow it to "issue assent for pre-existing residential boating facilities . . . [which] may be issued . . . even though such facilities do not meet current standards and policies of the [C.R.M.C.] as long as they `do not pose any significant risk to the coastal resources of the state . . . and do not endanger human safety.'" R.I. Gen. Laws § 46-23-6(6)(i) (as enacted by R.I. Pub. Laws 1994 ch. 153 § 1). Pursuant to the amended statute, Frost applied in 1996 to the C.R.M.C. for permission to maintain a residential recreational boating facility.
After receiving Frost's 1996 application, the C.R.M.C. sent an environmental scientist, John Sposato, to the Property to evaluate the requested assent. Sposato observed that, to the best of his knowledge, the facility was "the only metal dock" for *Page 9 
which an assent had been sought. Intervenor's Mem., App. 3, Ex. 11 (Letter from John Sposato to Grover Fugate). Additionally, the facility is "obvious[ly] . . . in a deteriorated condition." Id. Sposato recommended that the "best interest of the coastal resources" would be served by removing the facility within three years. Id. On March 13, 1996, C.R.M.C. issued a residential dock assent to Frost, conditioned upon removal of the metal dock within three years and replacement with a timber pier, not to exceed four feet in width and seventy-two feet in length, as recommended by Sposato. See C.R.M.C. Residential Dock Assent A96-2-44.
In 2002, three years after expiration of that assent, Frost applied for an assent modification. In his application, Frost sought permission to remove the existing dock and replace it with a pier facility and a bulkhead. He indicated that this new dock would be used as a commercial fishing pier (and not a recreational boating facility, per the original assent). Frost submitted plans to make this dock conversion, designed and certified by Ron Blanchard, a professional engineer, pursuant to the C.R.M.C. policy requiring "commercial . . . docks . . . [to] be designed and certified by a registered professional engineer." R.I. Coastal Resources Mgmt. Procedures § 300.3 E 1(c). The C.R.M.C., acting through Grover Fugate, its Executive Director, granted this assent modification on November 6, 2002, subject to strict compliance with the plans certified by Blanchard and submitted by Frost to the C.R.M.C.See C.R.M.C. Assent Modification to Assent A96-2-44.
Assent modifications expire three years after issuance.See R.I. C.R.M.C. Mgmt. Procedures § 5.12. As such, Frost's assent modification expired, by its terms, on November 6, 2005. On some date, Frost filed a C.R.M.C. Assent Extension Request *Page 10 
Form with the agency.[5] After the C.R.M.C. granted several continuances requested by Frost and the Intervenor, the agency held a hearing on Frost's assent extension request on July 2, 2007. At this hearing, the C.R.M.C. staff advised the agency that they had visited the Property to ascertain whether the work at the site was in substantial compliance with the previous assent, as required by C.R.M.C. policy, [6] and found three violations. The C.R.M.C. staff found that Frost had exceeded the limits under his plan in two areas and had placed stones in impermissible areas of the Property. See Tr. of Hr'g at 44-45, Sept. 25, 2007. Accordingly, the C.R.M.C. issued a cease and desist letter to Frost, ordering him to cease all activity on the Property and to take action to rectify his non-compliance with the previous assent within thirty days. In the face of such non-compliance, the C.R.M.C. determined that it could not consider Frost's assent extension request and deferred consideration of that request for over two months pending his compliance.[7]
The C.R.M.C. next held a hearing on Frost's assent extension request on September 25, 2007, though neither Frost nor anyone representing him were present. Frost alleges that he was not given notice of the hearing — an allegation contested by the C.R.M.C. and the Intervenor. At that hearing, the C.R.M.C. heard additional evidence from its staff that Frost had not taken sufficient steps to resolve the violations noted at the previous hearing. The C.R.M.C. thus voted to deny Frost's assent extension request, order restoration of the site in conformance with the approved plans by removing all unauthorized material, and redesignate the dock from commercial to residential with *Page 11 
limited commercial use. The C.R.M.C. issued a written order in this matter on October 22, 2007, memorializing its rulings, from which Frost now appeals.
Frost attacks the C.R.M.C.'s decision, as reflected in its Order dated October 22, 2007, on several grounds. He contends that the C.R.M.C.'s actions: (1) constituted a deprivation of his constitutional and statutory rights to due process; (2) were made in violation of the proper statutory procedure; (3) were affected by other errors of law; (4) were clearly erroneous in light of the evidence of record; and (5) were characterized by an arbitrary and capricious abuse of discretion. More specifically, Frost claims that the C.R.M.C. failed to give him notice of the hearing. In addition, he argues that the C.R.M.C. failed to file a timely response in this case or certify the administrative record in a timely manner as required by R.I. Gen. Laws § 42-35-15(d). Finally, he suggests that the decision of the C.R.M.C. is not supported by the evidence of record and reflects clearly erroneous findings of fact and improper conclusions of law.
The C.R.M.C. and the Intervenor dispute all of these claims, arguing that the C.R.M.C. gave proper notice and acted properly, within its authority, and in a rational manner considering the evidence of record. They argue that the standard of review in agency appeals is extremely deferential and that this Court should not now sort through the record with a fine tooth comb in an effort to justify substitution of its judgment for that of the agency. They also argue that the C.R.M.C. was not required to file a reply and that its filing of the certified record, even if untimely, does not warrant the harsh remedy of dismissal. *Page 12 
 II. STANDARD OF REVIEW
Frost appeals the decision of the C.R.M.C. under the provisions of the Administrative Procedures Act, R.I. Gen. Laws § 42-35-15. That statute permits the Court to affirm, remand, or modify an agency's decision "if substantial rights of the appellant have been prejudiced" because the agency's action was:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I. Gen. Laws § 42-35-15(g).
The Rhode Island Supreme Court has held that this Court's review under the statute is simply "`an extension of the administrative process.'" Strafach v. Durfee, 635 A.2d 277, 280 (R.I. 1994) (quoting Environmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993)). Accordingly, "`review is restricted to questions that the agency itself might properly entertain.'"Id. (quoting Easton's Point Ass'n v. C.R.M.C.,522 A.2d 199, 202 (R.I. 1987)). The Court, therefore, "`is confined to a determination of whether there is any legally competent evidence to support the agency's decision.'" Id. (quotingBarrington School Comm. v. R.I. State Labor Relations Bd.,608 A.2d 1126, 1128 (R.I. 1992)). If "`competent evidence exists on the record considered as a whole, the court is required to uphold the agency's conclusions.'" Id. The Court must not question the findings of the agency with respect to the credibility of witnesses or the weight of the evidence on questions of fact.Costa v. Registrar of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988). *Page 13 
This standard is permissive; the Court "must affirm the decision of the agency unless its findings are clearly erroneous."Guarino v. Dept. of Social Welfare,410 A.2d 425, 428 (R.I. 1980).
In analyzing questions of law, however, this Court conducts ade novo review and is not bound by the agency's decision.Narragansett Wire Co. v. Norberg, 376 A.2d 1, 6 (R.I. 1977). Yet, the agency's interpretation of its own enabling statute or regulations should be accorded "weight and deference as long as that construction is not clearly erroneous or unauthorized," Inre Lallo, 768 A.2d 921, 926 (R.I. 2001) (citation omitted), "even when other reasonable constructions of the statute are possible."Labor Ready Northeast, Inc. v. McConaghy,849 A.2d 340, 345 (R.I. 2004).
 III. ANALYSIS A Timeliness of C.R.M.C. Filings
Frost claims at the outset that the C.R.M.C. failed to file a response brief and failed to file the certified record in a timely manner under R.I. Gen. Laws § 42-35-15(d). He argues that those violations warrant reversal by this Court of the underlying decision of the C.R.M.C. that is the subject of his appeal.
Rule 80 of the Rhode Island Superior Court Rules of Civil Procedure, which concerns the review of administrative actions, provides that "[n]o responsive pleading need be filed [to a complaint filed by an aggrieved party seeking review of an agency decision] unless required by statute or by order of the court." Nothing in the Administrative Procedures Act, §§ 42-35-1 etseq., requires such a filing nor is there any *Page 14 
evidence of such a requirement in any other statute or court order applicable to this case. Moreover, Frost suffered no prejudice as a result of the C.R.M.C.'s alleged untimely filing. Frost's argument that the C.R.M.C.'s failure to file a timely responsive brief entitles him to prevail on appeal thus must be rejected.
It is true, as Frost posits, however, that § 42-35-15(d) of the Administrative Procedures Act requires that the agency "transmit to the reviewing court the original or a certified record of the entire record of the proceeding under review." It must do so "[w]ithin thirty (30) days after the service of the complaint, or within further time allowed by the court." Section 42-35-15(d). As Frost served his Complaint on November 14, 2007, the C.R.M.C. should have filed the certified record with this Court on or before December 15, 2007 or otherwise sought the permission of the Court to extend the time for filing. See id. In this case, however, the C.R.M.C. filed the certified record nearly two months late, on February 6, 2008, without obtaining a court-ordered extension of the filing deadline. The Court presumably would have granted a request for extension by the C.R.M.C. for good cause. While its filing thus was untimely under the statute — and this Court certainly cannot countenance that delay — there is no evidence of the absence of good cause or that the delay prejudiced Frost.
In addition, as the C.R.M.C. and the Intervenor note, it is disingenuous for Frost to complain that the C.R.M.C.'s untimely filing of the certified administrative record delayed the progress of his appeal where Frost himself failed to serve the Intervenor with a copy of his Complaint, as required by R.I. Super. R. Civ. P. Rule 80, for over two months after the C.R.M.C. filed the certified record. Frost's own untimely service and consequent delay thus negates any potential prejudice suffered by him from delay on the *Page 15 
part of the agency. Under these circumstances, and mindful that the Administrative Procedures Act establishes no penalty for the untimely filing of a certified record on appeal, seegenerally § 42-35-15, this Court declines to reverse the decision of the C.R.M.C. for its delay of less than two months in filing the certified administrative record.
 B Notice
Frost next contends that the C.R.M.C. violated his right to due process by not giving him notice of the September 25, 2007 meeting at which the agency reached the decision that is now the subject of his appeal. When a government, or any of its agencies, seeks to deprive an individual of the use of his or her property, it generally must provide "`notice and opportunity for hearing.'" Jones v. Flowers,547 U.S. 220, 223 (2006) (quoting Mullane v. Central HanoverBank Trust Co., 339 U.S. 306, 313 (1950)). This due process requirement, however, does not inflexibly mandate that a property owner receive actual notice. Id. Obviously, if an agency's action could be invalidated were a plaintiff not to receive actual notice, a dissatisfied party easily could frustrate all agency action by claiming that it never received such notice. Rather, due process only requires that the government "provide `notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"Id. at 226 (quoting Mullane, 339 U.S. at 314). Rhode Island case law in this area generally mirrors the federal guidelines. See, e.g., Flynn v. Al-Amir,811 A.2d 1146 (R.I. 2002); State v. Feng,440 A.2d 732 (R.I. 1982). *Page 16 
According to the C.R.M.C.'s Management Procedures, notice of C.R.M.C. hearings for contested cases must conform to the requirements of R.I. Gen. Laws § 42-35-9 to insure that parties be afforded the opportunity to be heard. R.I. C.R.M.C. Mgmt. Procedures §§ 5.2(2), 5.3(4); seealso Burdick v. C.R.M.C., C.A. No. 79-3734 1982 R.I. Super. LEXIS 2, Jan. 6, 1982. The statute requires, in that regard, information regarding the time, place and nature of the hearing, including a statement of the legal authority and jurisdiction, reference to statutes involved, and a short and plain statement of the related matters. R.I. Gen. Laws § 42-35-9. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved and detailed statement shall be furnished. Id.
R.I. Gen. Laws § 42-35-9 is intended to "`assure that a party is apprised of the nature of the hearing so that he can adequately prepare.'" Horbet v. New Penn, Inc., C.A. No. 09-6960, 2011 R.I. Super. LEXIS 1, at *24 (R.I. Super. Jan. 10, 2011) (citation omitted). And thus the notice must "`draw attention to . . . the subject matter to be considered in the hearing.'" Id. at *25 (quoting Providence GasCo. v. Burke, 380 A.2d 1334, 1342 (1977)).
In this case, there is abundant evidence of the C.R.M.C. mailing notices both to Frost and the Intervenor. See Case App. 2. On August 29, 2007, the C.R.M.C. sent written notice, by letter, indicating that Frost's application would be reviewed at the September 11, 2007 meeting. R. 2 at 21. The C.R.M.C. sent the letter to twenty-one persons, whose names appeared on its mailing list, including Frost and the Intervenor. R. 2 at 23-24. It was the Intervenor that requested that the hearing, originally scheduled for September 11, 2007, be continued until September 25, 2007. On September 6, 2007, the C.M.R.C. sent another letter, indicating that Frost's application would be reviewed at the *Page 17 
September 25, 2007 meeting. R. 2 at 29. The C.R.M.C. sent that notice to the persons on the mailing list, including Frost and the Intervenor. R. 2 at 30-31.
This evidence of notice clearly fulfills the requirements of procedural due process. Moreover, the purpose of the notice requirement, as articulated in Mullane and reaffirmed inJones, is to provide property owners with notice of the "pendency of the action" while affording them the "opportunity to present their objections." Jones,547 U.S. at 226 (citation omitted). As the record of this case demonstrates, Frost was most certainly aware of the pendency of the administrative action. First of all, he initiated it himself by filing an assent extension request. R. 7 at 18. In addition, before the September 25, 2007 hearing at which the C.R.M.C. denied his request, Frost and his son had been in constant communication with the C.R.M.C. and had attended a previous hearing on July 2, 2007 on the same subject. See generally, R. 2; R. 5; R. 6. Plaintiff knew that he had to rectify his found non-compliance with the prior assent before this hearing. R. 11 at 75 (Cease and Desist Letter Jun. 13, 2007). Frost's numerous interactions with the C.R.M.C. and its agents, in addition to his son's attendance at previous meetings on the same subject as that taken up at the September 25, 2007 meeting, and the record of notice of the hearing sent by the C.R.M.C. prove that he had ample notice of the September 25, 2007 meeting, at which he would have had an opportunity to argue in favor of his assent extension request.[8] Frost has failed, therefore, to prove any due process violation that would warrant reversal of the C.R.M.C. decision on appeal. *Page 18 
 C Merits of C.R.M.C. Decision
In considering the merits of the C.R.M.C decision, this Court first must address whether the C.R.M.C. properly found that it had jurisdiction over Frost's proposed project under R.I. Gen. Laws §§ 46-23-1 et seq. It goes without saying that the C.R.M.C.'s regulation of Frost's attempts to construct a dock, a pier, or any other such structure that would jut out from his land into the water is comprehended by the language in the C.R.M.C.'s enabling statute permitting it to implement programs intended to "achieve wise use of the land and water resources of the coastal zone." Id. § 46-23-1(b). The C.R.M.C. thus clearly had jurisdiction over Frost's proposed project and its conclusion of law to that affect was not in error.
The Court next turns to a determination as to whether the C.R.M.C.'s factual findings were clearly erroneous, arbitrary, or characterized by an abuse of discretion. In making this determination, this Court must be mindful of the deference it owes to a considered decision of the agency below. SeeEnvironmental Scientific Corp. v. Durfee, 621 A.2d at 208. It is not the province of this Court to reject the factual findings of the C.R.M.C. unless they are clearly erroneous; rather, the Court simply must ensure that the agency's actions were made in good faith and were not obviously in error. See In re Lallo,768 A.2d at 926.
The first three factual findings of the C.R.M.C. respecting the location of the property, the designation of the previous assent, and the history of the prior hearings are clearly accurate and undisputed. Although Frost's Complaint was inartfully drafted, it appears that he quarrels with the C.R.M.C.'s finding that, as of the date of the hearing, he *Page 19 
was not in compliance with the previously issued assent for the Property — a finding that the agency made based on testimony and evidence presented by its staff that it found credible and persuasive.
Among other discrepancies, the staff noticed that there were stones in impermissible areas of the Property. The staff testified at the September 25, 2007 hearing that Frost was aware of what he was obligated to do to bring the Property into compliance with the previously granted assent and that he had failed to oblige. In addition, there was extensive public comment against (as well as for) Frost's requested extension.
Frost has failed to convince this Court that these findings are clearly erroneous. The C.R.M.C. was entitled to credit the testimony of its staff. Moreover, the C.R.M.C. noted that, although Frost had been given an opportunity to submit a revised plan that would permit it to consider allowing him to maintain the stones in their current position, he had refused to do so. This fact is undisputed and was noted several times throughout the course of the September 25, 2007 hearing. See Tr. of Hr'g at 44-45, 66-67, Sept. 25, 2007.
Indeed, Plaintiff does not dispute that he did not remove the stones and that he exceeded the limits of his plan in other respects. He instead faults the C.R.M.C. for its indifference to the possibly deleterious effects on the surrounding marsh of forcing him to comply with its previous assent claiming that this lack of concern violates the C.R.M.C.'s statutory obligation to protect the coastal environment.[9] But the C.R.M.C., and not Frost or any other person, is responsible for determining what constitutes unacceptable harm to the coastal resources of Rhode Island, absent statutory direction *Page 20 
otherwise. See R.I. Gen. Laws § 46-23-1(b). In this case, the C.R.M.C. found Frost to be in violation of its previously granted assent, the purpose of which was to constrain Frost from acting in a manner contrary to the directives of the C.R.M.C. Indeed, it is Frost's willful disregard of the C.R.M.C.'s authority that does damage to the state's coastal resources, not the C.R.M.C.'s insistence that he adhere to its policies and assents.[10]
Having found Frost to be in non-compliance with the provisions of the previous assent currently in force on the Property, the C.R.M.C. observed that its rules prohibited it from granting the extension sought by Frost. The language of the rule could not be clearer: "[e]xtensions may be granted for projects only if it has been determined by staff that the work accomplished is in compliance with the conditions of approval established by the Council." C.R.M.C. Mgmt. Procedures § 5.12. As the staff found that Frost was not in compliance with the C.R.M.C.'s previous issued assent, and that finding is not clearly erroneous, the C.R.M.C. was entitled to rely upon it, as a matter of law, in denying the extension request. This Court gives great deference to agency interpretations of the statutes that the agency is charged with upholding. SeeIn re Lallo, 768 A.2d at 926.
Based upon its findings of fact and conclusions of law, the C.R.M.C. ordered denial of the extension and restoration of the Property to bring it into compliance with the criteria specified in the previous assent. Out of an abundance of caution, the C.R.M.C. also specified that the previously issued assent was intended to be consistent with this *Page 21 
Court's 1976 Order issued in Frost I, 350 A.2d at 608. Given the facts accepted by the C.R.M.C., its order is wholly appropriate. Because neither the findings of the C.R.M.C. nor the determinations of its staff who visited the Property are clearly erroneous, and because the C.R.M.C. committed no errors of law or abuse of discretion, it is not the prerogative of this Court to upset that considered decision.
 IV. CONCLUSION
For the reasons stated in this Decision, this Court affirms the October 22, 2007 decision of the Coastal Resources Management Council that denied Plaintiff Robert M. Frost's request for an extension of the C.R.M.C.'s modification of assent previously granted to him, ordered restoration of the site in conformance with the approved plans by removing all unauthorized material, and redesignated the dock from commercial to residential with limited commercial use in conformance with Frost I, 350 A.2d at 608. Plaintiff's appeal from that decision is denied and dismissed. This case is remanded to the C.R.M.C. for further proceedings connected with its October 22, 2007 decision, as affirmed by this Court.
Counsel shall confer and submit to this Court forthwith for entry an agreed upon form of order and judgment that is consistent with this Decision.
[1] See Frost v. C.R.M.C., 469 A.2d 369 (R.I. 1983);Town of Warren v. Frost, 350 A.2d 608 (R.I. 1976) ("Frost II"); Town of Warren v. Frost, 301 A.2d 572 (R.I. 1973) ("Frost I").
[2] In his application, Plaintiff explicitly requested an "assent to construct and maintain a timber pier 100 ft. by 8 ft., mooring piles, and dredge an area 100 ft. by 100 ft. and an area 75 ft. by 500 ft. to a depth of 4 ft. below mean low water (approximately 5000 cu. yds.), dredged material to be placed on land of applicant above mean high water, suitably confined in Kickamuit [sic] River at Warren, R.I. off Read Ave. and Harding Ave." Intervenor's Mem., App. 3, Ex. 2.
[3] See also Frost I, 301 A.2d at 573.
[4] See R.I. Coastal Resources Mgmt. Procedures § 100.4(E).
[5] As there is no date on the C.R.M.C. Assent Extension Request Form filed by Frost, its filing date cannot be ascertained.See Case App. 7, p. 18. This Court is unsure whether Frost actually filed the form before his assent modification expired, though several parties assert that position in their memoranda.
[6] When evaluating whether to grant or reject an assent extension request, the C.R.M.C. staff must determine "that the work accomplished [so far] is in compliance with the conditions of approval established by the Council" in the assent. R.I. Coastal Resources Mgmt. Procedures § 5.12.
[7] Notably, Frost does not deny that he was in non-compliance with the previous C.R.M.C. assent.
[8] Query whether, in actuality, Frost's failure to appear at the hearing on September 25, 2007 was voluntary on his part as a result of his inability or unwillingness to rectify his non-compliance with the prior assent before the hearing?
[9] Frost, in his memoranda, does not specify which section of the C.R.M.C.'s enabling statute it allegedly violated.
[10] During the pendency of this matter, the Rhode Island Supreme Court issued its opinion in In re Req. for Advis. Op. from theHouse of Representatives (C.R.M.C.), 961 A.2d 930 (R.I. 2008), in which the Court opined that the method of appointing members to the C.R.M.C. is unconstitutional. The Court noted, however, that actions of the C.R.M.C. taken prior to the Court's decision "should be accorded de facto validity."Id. at 942 n. 18. As the C.R.M.C. issued its order in this case on October 22, 2007, before the Supreme Court handed down its decision in In re Req. for Advis. Op.
on December 18, 2008, the constitutional infirmities of the C.R.M.C. do not affect the validity of its decision in this case. *Page 1